## O. A. & A. A. EYLAR v. J. F. EYLAR AND WIFE.

(Case No. 1258.)

1. NOTICE — POSSESSION.— The sole office which possession performs in the matter of notice is, to put a person desiring to purchase upon inquiry, and it has no effect in determining what the inquiry shall be or of whom it shall be made.

2. NOTICE.— A purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title, when he finds on record in the county a deed from such vendor conveying title, properly proved up and registered. To hold otherwise would be to strike at the very foundation of the policy on which registration laws rest. When inquiry as to title is prosecuted to the highest source which affords evidence of the right, there

| 60 | 315 |
| 75 | 652 |
| 60 | 315 |
| 86 | 283 |

is no obligation to explore inferior and less reliable channels of information. Mullin's Guardian v. Wimberly, 50 Tex., 457, discussed and distinguished. Van Keuren v. Central R. R. Co., 9 Vroom, 167; Grotons Savings Bank v. Batty, 30 N. J. Eq., 133; N. Y. Life Ins. Co. v. Cutler, 3 Sandf. Ch., 179; Cook v. Travis, 20 N. Y., 400; Bloomer v. Henderson, 8 Mich., 395; Scott v. Gallaher, 14 S. & R., 333, cited and approved.

3. CHARGE OF COURT.— See opinion for charge of court held erroneous as applied to the case.

4. LIEN — HOMESTEAD.— A lien on a homestead, existing prior to the adoption of the present state constitution, cannot be divested under its operation, and one who received an absolute deed from the owner of the homestead as security for advancing money to discharge such a lien would be subrogated to the rights of the original lien holder against the homestead.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

The opinion states the case.

*John D. Lee*, for appellants, cited: Wood v. Wheeler, 7 Tex., 13; Gunn v. Barry, 15 Wall., 610; Thompson on Homesteads, §§ 10, 11, 291, 293; Peters v. Clements, 46 Tex., 114; Dunlap v. Wright, 11 Tex., 597; Baker v. Ramey, 27 Tex., 52.

On subrogation he cited: Moore v. Raymond, 15 Tex., 554; Murray v. Able, 19 Tex., 213; McAlpin v. Burnett, 19 Tex., 500; White v. Downs, 40 Tex., 225; Flanagan v. Cushman, 48 Tex., 244; Cannon v. McDaniel, 46 Tex., 304; De Bruhl v. Maas, 54 Tex., 469.

On tender he cited: Howard v. North, 5 Tex., 290; Johnson v. Caldwell, 38 Tex., 217; Mann v. Falcon, 25 Tex., 275; Hannay v. Thompson, 14 Tex., 142; Davis et al. v. Brewster et al., Galveston term, 1882 (59 Tex., 93); Bailey v. White, 13 Tex., 114; Herndon v. Rice, 21 Tex., 455; McDonough v. Cross, 40 Tex., 285; Peters v. Clements, 52 Tex., 140; Burns v. Ledbetter, 54 Tex., 382.

On parol trusts he cited: Mead v. Randolph, 8 Tex., 191; Vandever v. Freeman, 20 Tex., 333; Massey v. Massey, 20 Tex., 134; Miller v. Thatcher, 9 Tex., 482; Cuney v. Dupree, 21 Tex., 211.

On constructive notice he cited: Alstin v. Cundiff, 52 Tex., 465; Ranney v. Miller, 51 Tex., 263; Cameron v. Romele, 53 Tex., 238; Billington v. Welsh, 5 Binney (Pa.), 129; Kerr on Fraud and Mistake, 80, 81, 257; Camp v. Camp, 2 Ala., 632; Parham v. Randolph, 4 How. (Miss.), 435; Meehan v. Williams, 48 Pa. St., 240; Wickes v. Lake, 25 Wis., 96; Tuttle v. Jackson, 6 Wend., 226; Smith v. Yule, 31 Cal., 184; Bigelow on Estoppel, 604; Wade on Notice, secs. 280, 288, 290, 291, 292, 297, 300.

*Beale & Jones*, for appellee, cited on mortgages: Mead *v.* Randolph, 8 Tex., 199; Mann *v.* Falcon, 25 Tex., 275; Luckett *v.* Townsend, 3 Tex., 119; Stephens *v.* Sherrod, 6 Tex., 294; Horne *v.* Puckett, 22 Tex., 205; Moreland *v.* Barnhart, 44 Tex., 283; Hudson *v.* Wilkinson, 45 Tex., 444; De Bruhl *v.* Maas, 54 Tex., 472; Jones on Mortgages, sec. 316.

On purchaser without notice, they cited: Watkins *v.* Edwards, 23 Tex., 447; Beaty *v.* Whitaker, 23 Tex., 528; Jewett *v.* Palmer, 7 Johns. Ch., 65; High *v.* Batte, 10 Yerg., 335; Rawles *v.* Perkey, 50 Tex., 315.

STAYTON, ASSOCIATE JUSTICE.— There are many assignments of error in this case, but only such of them will be considered as are deemed well taken, and necessary to be considered for the proper determination of this appeal.

It appears that on May 1, 1876, J. F. Eylar and wife conveyed the property in controversy to O. A. Eylar, by deed absolute in form, containing clause of general warranty and reciting a consideration of $500 paid. This deed was acknowledged by the husband and wife in such manner as would pass title to homestead property, and was filed for record on the day of its execution. At the time of this conveyance the property was used by J. F. Eylar as a saddler shop, and after the purchase he continued to use it for the same purpose.

On the 26th of October, 1876, O. A. Eylar conveyed the property to Ann A. Eylar, his mother, in consideration of $500, the greater part of which seems to have been paid by the other children of Ann A. Eylar, prior to the institution of this suit. Mrs. Ann Eylar executed five notes to secure the payment of the purchase money; whether they were negotiable, or had been negotiated, does not appear.

It is claimed by the appellees that it was agreed between them and O. A. Eylar that the deed executed by them to him should only operate as a mortgage to secure to him the repayment of money which he agreed to pay to Padgitt, who held an express lien upon the lot for the purchase money, and further to secure to him the repayment of such sum as he had agreed to pay to one Shelton on a debt due to him by J. F. Eylar, to secure which Shelton held a deed of trust on the property in controversy which was executed March 1, 1875.

The indebtedness of J. F. Eylar to Padgitt and to Shelton was paid by O. A. Eylar, and together amounted to more than $500.

It is claimed by the appellants that the conveyance to O. A. Eylar was an absolute sale, and not understood by the parties thereto as in any sense a mortgage, and that after the date of the deed to him the appellees recognized him as their landlord and paid to him rent for the property until he conveyed to Ann A., and that after that time they so recognized Ann A. and paid rent to her, and there was much evidence tending to show that this was true.

That money designated as *rent* was paid by J. F. Eylar he does not deny, but claims that the sums which he paid, while denominated *rent*, were agreed and understood to be only paid as interest on the sum paid to Padgitt and Shelton.

Mrs. Ann A. Eylar further claims, if the conveyance from J. F. Eylar and wife to O. A. Eylar was, as between them, only intended as a mortgage, that she had no notice of that fact, and is entitled to protection as an innocent purchaser.

There is no evidence that Ann A. Eylar had any actual notice that the deed to O. A. Eylar was intended by the parties to it simply as a mortgage, and it is contended by the appellees that their possession of the property after they had made the deed to O. A. Eylar and the same had been placed upon record was notice to her of any understanding which may have existed between them and O. A. Eylar.

Upon this subject the court gave, the following instructions: "Notice is of two kinds, actual and constructive; actual notice is the actual personal knowledge by a person of an existing state of facts; constructive notice is an apparently existing state or condition of things, such as would put a person upon inquiry to ascertain the actual state of facts. The actual possession of property by any one, whether he has title to same or not, and the relationship of the parties is such constructive notice as to put a purchaser upon inquiry, but such possession must be clear, open, notorious and unequivocal. Such inquiry is only required to be reasonable and diligent, such as the examination of the proper records, and inquiry by those who, by their connection with the matter, are most likely fully to be informed about it."

The giving of this charge is assigned as error. This charge in effect assumes that the possession of a vendor, after having executed an absolute deed which has been placed upon record, is constructive notice of whatever right the vendor may have secretly retained, by verbal agreement or otherwise, with his vendee.

This precise question, so far as we know, has not been passed upon by this court.

In the case of Mullins, Guardian, *v.* Wimberly, 50 Tex., 446, the question seems to have been considered, and the opinion seems to limit the application of the rule that possession is notice of whatever title the possessor has, to cases in which the possessor is not knowingly in fault in permitting a deed which he has executed to be placed on record, or to cases in which the possessor has not voluntarily aided in misleading a purchaser. The facts of that case were peculiar, and one of the grounds upon which the title of the possessor was sustained, although a deed of the ancestor of the guardian's wards was shown to have been executed and recorded before the right of the claimant attached, was that the instrument through which the claimant asserted title was executed in mutual mistake as to the land which both parties intended should be covered by it. Many cases can be found in our reports in which it is said that possession is notice of whatever title the possessor has. Among them are the following: Watkins *v.* Edwards, 23 Tex., 443; Hawley *v.* Bullock, 29 Tex., 223; Mainwarring *v.* Templeman, 51 Tex., 212; Wimberly *v.* Bailey, 58 Tex., 227. All of these were cases in which the rule was applicable, and the language must be understood with reference to the facts of the cases.

It would seem that the sole office which possession performs, in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made.

The policy of the law, as evidenced by our statutes, requires all conveyances of land or interests therein for a term longer than one year to be evidenced by writing, and when parties place, in this the most certain and enduring form, the evidence of their right, they ought to be held, so far as third persons are concerned, to have therein spoken truly in respect to the title to the land to which the conveyance relates.

That all persons who may deal with persons claiming land may have the means of knowing in whom titles to land rest, and that no one may buy what appears to be a good title, when another person may have better right not made public, the law requires all persons, for the protection of innocent purchasers and creditors, to register their titles to land.

Such being the case, can it be said, even if possession is sufficient in all cases to put purchasers upon inquiry, that such inquiry is not prosecuted sufficiently far, when the person who desires to buy examines the records of the county and finds on record a deed from the person in possession to the person who offers to sell, and who under that deed asserts title.

If the inqury is prosecuted to the highest source which the law of the land declares shall exist for the determination of title, and to the source which the parties have created as the highest evidence of their respective rights, can it be true that it is further necessary to examine sources inferior and make inquiry as to whether or not there are claims, or even rights, in others not evidenced as the law requires, or otherwise the purchaser be charged with constructive notice of secret vices in the title which he buys.

To so hold, we are of the opinion, would be to strike at the very foundation of the policy upon which registration laws rest.

That there are cases to which registration laws do not apply is true, but those are cases in which titles vest by operation of law, or cases in which there has not been a wrongful holding out of some person to be the true owner of land, when in fact some other person has the better right, and not cases in which parties, as between themselves, have executed instruments evidencing their respective rights, which may be and which the law requires to be registered.

By the deed in question, the parties who now assert claim through a secret agreement declared in the most solemn form that the land in controversy was the property of O. A. Eylar; they permitted that declaration to be placed on record for the very purpose of giving information to all persons as to the true ownership.

Such being true, can the simple fact that they remained in possession of the land which they had declared belonged to another, which they might lawfully do as the tenants at sufferance or otherwise of such other person, make it requisite for any person who may desire to buy from the person whom they have so declared to be the owner, to inquire of themselves whether or not they had uttered the truth in their deed, whether or not their own declaration was false?

We are of the opinion, under the facts in this case, that a purchaser from O. A. Eylar was not bound to inquire of the appellees what right they had in the land; that the inquiry was sufficiently prosecuted; prosecuted as far as a prudent man, having a due regard to the rights of others, and to his own protection, would be bound to prosecute it, when he looked to the record and there found that O. A. Eylar was declared by the very persons in possession to be the true and absolute owner of the land.

The following cases sustain the views here expressed: Van Keuren v. Central R. R. Co., 9 Vroom, 167; Grotons Savings Bank v. Batty, 30 N. J. Eq., 133; New York-Life Insurance Co. v. Cutler, 3 Sandf. Ch., 179; Cook v. Travis, 20 N. Y., 400; Bloomer v. Henderson, 8 Mich., 395; Dawson v. Danbury Bank, 15 Mich., 497;

Scott v. Gallagher, 14 S. & R., 333; Newhall v. Pierce, 5 Pick., 451. The same conclusions are reached by the learned authors of notes to Leading Cases in Equity, vol. 2, part 1, 184.

As between O. A. Eylar and the appellees, the agreement that the instrument should have only the effect of a mortgage, if it was so made, would be enforced when clearly shown, and it would so be limited as against Ann A. Eylar if she had notice of such agreement. The view maintained in the charge of the court is not, however, without authority for its support, as will be seen by an examination of the following cases: Grimstone v. Carter, 3 Paige, 439; Daulenspeck v. Platt, 22 Cal., 333.

The charge of the court was further objectionable, in that it gave too great weight to the relationship of the parties upon the question of notice; if that fact had a bearing upon the question, it was but a fact like any other for the consideration of the jury, without a charge from the court as to its weight.

O. A. Eylar sought, in case it should be found that the conveyance to him was intended by the parties to operate only as a mortgage, to be subrogated to the rights which Padgitt and Shelton both had under their liens, which the appellees, in effect, alleged were merged in the instrument which they charge is but a mortgage, and this, by their agreement, for the purpose of securing to O. A. Eylar the repayment of such sums as he paid to both of the lien holders.

The court charged the jury that as to the sum which he had paid to Padgitt on the purchase money for the lot in controversy, he was entitled to be subrogated, and the jury found in his favor to that extent.

The court further charged the jury, in effect, that he was not entitled to be subrogated to the rights which Shelton had under his lien, if, at the time the deed was made to him, the property was a part of his homestead, and refused to give a charge substantially to the contrary.

The fact that the property was a part of the homestead of the appellees at the time they made the deed to O. A. Eylar would not defeat his right to be subrogated to the rights of the lien-holders, who held valid liens, prior to the adoption of the present constitution, by and through which alone the place of business became a part of the homestead.

The lien held by Shelton, as well as that held by Padgitt, having been acquired prior to the adoption of the present constitution, was valid, and could not be divested by its adoption. Iken v. Olenick,

42 Tex., 195; Wood v. Wheeler, 7 Tex., 13; Gunn v. Barry, 15 Wall., 610.

The agreement of the parties, if the averments of the petition be true, was that Eylar, through the instrument now sought to be canceled as an absolute deed, should be subrogated to whatever rights either Padgitt or Shelton had, and the fact that the property may have been homestead at the time that instrument was executed does not in any manner interfere with its enforcement. Flanagan v. Cushman, 48 Tex., 244; Cannon v. McDaniel, 46 Tex., 304; Hicks v. Morris, 57 Tex., 658.

Many of the matters assigned as error will probably not arise upon another trial, and they will not be further considered. For the errors indicated the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 9, 1883.]