KELLEY et ux. v. GUARANTY BOND STATE BANK OF MT. PLEASANT. (No. 3494.)

Court of Civil Appeals of Texas. Texarkana. Jan. 16, 1928.

Rehearing Denied Feb. 9, 1928.

1. Homestead ⬉129(2)—Vendors' occupancy was notice of homestead rights to taker of notes secured by vendors' lien.

Vendors' occupancy of homestead put taker of notes secured by vendors' lien on inquiry as to vendors' homestead rights and charged it with notice thereof, where diligent inquiry would have disclosed homestead rights and deed to purchaser was not delivered or recorded.

2. Homestead ⬉129(2)—Holder of notes secured by vendors' lien held not innocent buyer and not entitled to foreclosure against homestead, where vendors had possession and inquiry would have disclosed facts.

Holder of notes secured by vendors' lien held not innocent buyer and not entitled to foreclosure as against vendors' homestead, where vendors were in possession and proper inquiry would have disclosed their homestead rights.

3. Homestead ⬉122—Vendor held not estopped to assert homestead rights as against holder of notes secured by vendors' lien.

Vendor held not estopped to assert that land was homestead as against holder of notes secured by vendors' lien, where she was in possession and did or said nothing to excuse inquiry.

On Appellee's Motion for Rehearing.

4. Estoppel ⬉110—Holder of notes secured by vendors' lien might not assert that vendor in possession was estopped to claim homestead rights, where estoppel was not pleaded.

Holder of notes secured by vendors' lien might not assert that vendor in possession was estopped to claim that land was homestead, where it failed to plead estoppel.

Hodges, J., dissenting.

Appeal from District Court, Titus County; R. T. Wilkinson, Judge.

Suit by the Guaranty Bond State Bank of Mt. Pleasant against W. L. Kelley and wife. From a judgment in favor of plaintiff, defendants appeal. Reformed, and, as reformed, affirmed.

Appellants W. L. Kelley and Olive Kelley, husband and wife, owned a small tract of land situated about one-half of a mile from the courthouse in Mt. Pleasant, and on January 15, 1920, were occupying and using same as their homestead. By an instrument of that date, duly recorded February 11, 1920, purporting to be a general warranty deed, they conveyed the land to Q. S. Loveless. The consideration of the conveyance (it appeared from recitals in the instrument) was the assumption by Loveless of the payment of $480 appellant W. L. Kelley owed on a promissory note held by Mrs. Sarah Lilienstern, and four promissory notes (three for $1,000 each, and the other for $1,520) then made by Loveless, payable January 15, 1921, 1922, 1923, and 1924, respectively, to W. L. Kelley's order, and secured by a vendor's lien retained on the land. By an instrument dated January 20, 1920, duly recorded the same day, W. L. Kelley, to secure a promissory note for $5,400 made by him to appellee, then doing business under the name "Guaranty State Bank," transferred the Loveless notes to it, and by the same instrument conveyed to appellee all the "right, title, and interest" he owned in the land as the holder of the notes. By a deed dated May 20, 1920,

recorded December 31, 1923, said Q. S. Loveless reconveyed the land to W. L. Kelley, in consideration, it was recited in the instrument, of the assumption by Kelley of the payment of the five notes mentioned above. Alleging that $3,690 of the $5,400 note, and interest thereon, made to it by Kelley remained unpaid and was due, and that the note for $1,000 made by Loveless and due January 15, 1921, had been paid, appellee sought by this suit to recover of W. L. Kelley the amount of the other three notes made by Loveless, payable January 15, 1922, 1923, and 1924, respectively, alleged to be unpaid, and a foreclosure of the vendor's lien retained to secure them as against both the appellants. In their answer to the suit appellants alleged that the land was their homestead at the time they made the deed to Loveless, and that the making of that deed, transfer of the notes to appellee, and reconveyance of the land to W. L. Kelley by Loveless was, and was known by appellee to be, in pursuance of a scheme to create a lien on their homestead to secure the $5,400 note executed by W. L. Kelley to cover, it was alleged, a loan of that sum made to him by appellee. At the trial the court submitted to the jury special issues as follows, which they answered as indicated:

"(1) Do you find from a preponderance of the evidence that the plaintiff bank did not have knowledge that the deed from W. L. Kelley and wife to Q. S. Loveless was intended only as a means of borrowing money on the purchase-money notes, at the time they acquired the notes sued on? Answer yes or no. Answer. Yes.

"(2) Do you find from a preponderance of the evidence that the plaintiff bank did not have notice of any fact or circumstance which would have been sufficient to put a reasonably prudent person on inquiry, which if pursued with reasonable diligence would have led to a knowledge of the fact that the deed from W. L. Kelley and wife to Q. S. Loveless was intended only as a means of borrowing money on the purchase-money notes, at the time it acquired the notes sued on? Answer yes or no. Answer. Yes."

The appeal is from a judgment as follows: In appellee's favor against W. L. Kelley (1) for $4,203.05 as the amount, principal, and interest, and $420.30 as the amount of attorney's fees, unpaid on the $5,400 note made by said W. L. Kelley to appellee, and (2) for $5,016 as the amount, principal, and interest, and for $501.60 as the amount of attorney's fees, unpaid on the three notes made by said Q. S. Loveless to said W. L. Kelley; and in appellee's favor against said W. L. Kelley and his wife, Olive Kelley, for a foreclosure of the vendor's lien retained on the land, and directing the proceeds of a sale ordered thereof to be applied to the payment of the $4,203.-05 and $420.30 adjudged to appellee on account of the $5,400 note, and that such payment and any others made on account of that note should operate as credits against the amount found to be unpaid on the Loveless notes.

Hutchings & Williams, of Mt. Pleasant, for appellants.

J. A. Ward, of Mt. Pleasant, for appellee.

WILLSON, C. J. (after stating the facts as above). [1] Appellants insist the trial court erred when he refused their request that he instruct the jury to return a verdict in their favor so far as the suit was to foreclose the lien asserted on certain land. We think the contention should be sustained. It appeared without dispute in the evidence heard at the trial that at the time appellants executed the instrument purporting to be a deed conveying the land to Q. S. Loveless, and at the time appellee made the loan to appellant W. L. Kelley and accepted the Loveless notes as security therefor, they (appellants) were, and during several years immediately before that time had been, occupying and using the land as their homestead. The effect of such occupancy was to put appellee on inquiry at the time it accepted the notes to ascertain by what claim of right appellants were then occupying and using the land, and to charge it with notice of what such inquiry diligently pursued would have disclosed. Eylar v. Eylar, 60 Tex. 315; Chamberlain v. Trammell, 61 Tex. Civ. App. 650, 131 S. W. 227; Bryant v. Sons of Hermann (Tex. Civ. App.) 152 S. W. 714; King v. Lane (Tex. Civ. App.) 186 S. W. 392; Brooker v. Wright (Tex. Civ. App.) 216 S. W. 196; Astin v. Martin (Tex. Civ. App.) 289 S. W. 442. In the case last cited the court said the general rule is that:

"Possession carries with it notice of the rights in the property claimed by the possessor, and requires those dealing with the property to make such inquiry to ascertain those rights as an ordinarily prudent person would make under the same or similar circumstances. The exceptions to this rule are where the party in possession has executed some conveyance, or has caused some instrument to be placed of record, which if accepted as evidence of his rights would be inconsistent with the claim he otherwise asserts."

[2] It was undisputed in the evidence that appellee made no inquiry whatever to ascertain by what claim of right appellants were then on the land—except that its president, E. S. Lilienstern, testified that before he made the loan he inquired at the county clerk's office to ascertain if the deed to Loveless had been filed there. The fact that it had not been, then made known to Lilienstern, should have caused appellee to pursue the inquiry further instead of causing it to abandon it, as it seems it did. We think it should have been assumed that inquiry, properly pursued, would have disclosed to appellee what uncontradicted evidence heard at the trial showed to be facts, to wit, that the

transaction between appellants and Loveless was in pursuance of a scheme to mortgage appellants' homestead to secure a contemplated loan of $5,400 by appellee to appellant W. L. Kelley, and further, that the transaction was incomplete at the time appellee made the loan, in that the deed to Loveless had not been delivered to him, but was in the possession of appellee Olive Kelley. If inquiry, properly pursued, would have disclosed such facts to appellee, it was not in the attitude of an innocent purchaser of the Loveless notes, and therefore was not entitled to a foreclosure of the lien it asserted on appellants' homestead. 19 C. J. 200; Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184; Moore v. Chamberlain, 109 Tex. 64, 195 S. W. 1135; Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Garner v. Risinger, 35 Tex. Civ. App. 378, 81 S. W. 343; Walker v. Erwin, 47 Tex. Civ. App. 637, 106 S. W. 164; Cox v. Payne, 107 Tex. 115, 174 S. W. 817; Cardwell v. Shifflet (Tex. Com. App.) 294 S. W. 519.

That the case was within the general rule and not within either of the exceptions thereto stated in Astin v. Martin, referred to above, was established by uncontradicted evidence showing that the deed to Loveless had not been delivered to him nor recorded or filed for record in the county clerk's office at the time appellee loaned the money to W. L. Kelley and accepted the Loveless notes as security for the repayment of the loan.

[3] Whatever may be said about the conduct of appellant W. L. Kelley in the transaction between him and appellee, there is nothing in the record before us showing appellant Olive Kelley to have done or said anything appellee was entitled to claim excused it from making inquiry to ascertain by what claim of right she was in possession of the land. That being true, appellee was not entitled to invoke the doctrine of estoppel as against her. Simkins on Equity, 319 et seq.; Cosgrove v. Nelson (Tex. Civ. App.) 269 S. W. 891.

The judgment will be so reformed as to deny appellee a foreclosure of the lien it asserted on appellants' homestead, and as so reformed will be affirmed.

HODGES, J. I do not concur in the disposition made of this case. I think the judgment of the trial court should be affirmed.

In presenting my reasons for not concurring in the disposition made of this appeal, I shall restate some of the material facts in detail.

Some time before the notes sued on were executed Kelley and his wife had discussed between themselves the propriety of borrowing money from the bank in order to enable Kelley to engage in the grocery business. The evidence supports the conclusion that they were unable to get a loan from the bank of the amount needed without giving security

in addition to Kelley's personal note. They finally agreed upon a fictitious sale of their homestead to Loveless, who was the father of Mrs. Kelley. For the purpose of carrying out that scheme Mrs. Kelley approached her father on the subject, explaining to him that they did not want to sell him their homestead, but only wished to get notes executed which would express a lien against the property, to be used as security for a loan. Loveless at first declined to be a party to the transaction, and undertook to dissuade Mrs. Kelley from carrying it out. When approached a second time, however, he yielded and agreed to perform his part of the scheme. Mrs. Kelley was then, and had been for a year or more, a deputy county clerk, and was familiar with the forms of deeds and conveyances usually entered upon the records. After gaining the consent of Loveless she wrote the deed, which was in terms an absolute conveyance, reciting as a consideration the execution of the notes which were later assigned to the bank. The record does not disclose who prepared the notes for Loveless to sign; that also may have been done by Mrs. Kelly. After the deed was signed by her she carried it to the bank and requested Lindsay, the cashier, who was a notary public, to take her acknowledgment, and that was done in due form. Later, probably on the same day, Kelley also appeared before Lindsay for the purpose of acknowledging the deed. According to the findings of the jury nothing had at that time been said to Lindsay, or any of the other bank officials, indicating that the deed was not what it purported to be—a bona fide conveyance of the land to Loveless. A short time after the acknowledgments were taken Mrs. Kelley, according to her testimony, called for the deed, and kept it in her possession or under her control continuously thereafter. About 20 days after its execution she, as deputy clerk, entered the deed upon the county records. The deed was dated January 15, 1920. On January 20, five days later, Kelley appeared at the bank and applied to Lindsay, the cashier, for the loan, offering as collateral security the notes mentioned in the deed as the consideration for the conveyance of the land to Loveless. Before securing the loan Kelley executed a written assignment of the notes and the lien they expressed, and also the superior legal title retained by the vendor to the land. The notes had been made payable to Kelley alone. That assignment was on the same day filed for record in the office of the county clerk and entered upon the records by Mrs. Kelley as deputy clerk at 4:30 p. m. At that time the bank officials, according to the findings of the jury, knew nothing about any fictitious sale agreement between the Kelleys and Loveless, but believed that the deed from Kelley and wife to Loveless was a bona fide sale and that the notes offered as security by Kelley represented the actual consideration. The

officials testified that if they had known that the sale was a fictitious one they would not have accepted the notes as security for the loan. Kelley and wife were then still residing on the land, and that fact was known to the bank officials.

The jury having found, upon conflicting testimony, that at the time the bank acquired the notes made by Loveless it had no actual notice that the transaction between him and Kelley and wife was a device to mortgage the homestead, the only remaining question is, Was the possession of the Kelleys as a matter of law constructive notice of the secret equities which they now assert? The majority have answered that question in the affirmative, and upon that ground alone have reversed the judgment of the trial court and here rendered a judgment in favor of the appellants. That ruling is, I think, in conflict with the holdings in the following cases: Alstin v. Cundiff, 52 Tex. 465; Cameron v. Romele, 53 Tex. 238; Love v. Breedlove, 75 Tex. 652, 13 S. W. 222; Heidenheimer v. Stewart, 65 Tex. 321; Hurt v. Cooper, 63 Tex. 362; Hoffman v. Blume, 64 Tex. 335; King v. Lane (Tex. Civ. App.) 186 S. W. 393; Graves v. Kinney, 95 Tex. 214, 66 S. W. 293; Girardeau v. Perkins, 59 Tex. Civ. App. 552, 126 S. W. 633; Bryant v. Grand Lodge (Tex. Civ. App.) 152 S. W. 714; Sperry v. Moody (Tex. Civ. App.) 269 S. W. 272; Eylar v. Eylar, 60 Tex. 315; Steffian v. Bank, 69 Tex. 513, 6 S. W. 823. To these may be added Bigelow on Estoppel (6th Ed.) 607.

In most of the cases above referred to, where possession was retained by the grantor, the fictitious deed, upon the faith of which credit had been given, had been recorded at the time the innocent third party acquired his rights, and the record thus made contributed to the deception. In some of those cases, however, the deed had not been recorded, but its existence was otherwise made known to the innocent third party whose rights were involved. That was the state of the evidence in Bryant v. Grand Lodge, Sperry v. Moody, and Steffian v. Bank, supra.

In controversies of this character liens against the homestead are not foreclosed because the intervention of the rights of third parties imparts any validity to the fictitious sale, but upon the ground of estoppel. The courts refuse to permit a party who has originated and profited by such a scheme to prove, to the injury of others, that what he has led them to believe was a bona fide sale was in fact only a sham. The record of a deed is notice that it has been executed and delivered to the grantee. When one executes a fictitious deed and has it recorded, or permits that to be done by others, he is guilty of a form of conduct which conclusively estops him from proving the fiction when others have been induced to acquire rights upon the faith of the deed. In the citation referred to above, Mr. Bigelow says:

"Where one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."

Recording a deed is a mere method of giving notice that it has been executed and delivered. Any other species of conduct on the part of the grantor, which is equally as effective and reliable as notice that such a deed has been executed and delivered, would have the same legal effect in creating an estoppel when such conduct is acted upon by an innocent third party. Bryant v. Grand Lodge, Sperry v. Moody, Steffian v. Bank, supra. Such estoppel would exist, even though the grantor was at the time in possession of the premises conveyed.

When Kelley appeared at the bank and applied for the loan, he presented the notes to Lindsay, the bank official who took the acknowledgments to the deed. Kelley knew that Lindsay was aware of the execution of the deed and its contents. If the findings of the jury are to be given effect, he also knew that Lindsay was ignorant of the fact that the transaction out of which the notes grew was a mere device to mortgage the homestead. The notes recited that they were given as part of the purchase price of the land described in the deed. The following is a part of the language used in the written conveyance of the notes to the bank which Kelley was required to assign in order to secure the loan:

"I do hereby bind myself that notes [are] the first and only lien on said land," etc.

The notes were evidently made payable to Kelley with the consent of his wife, who was an active participant in the sham transaction. Presenting those notes to the bank as security for a loan of money in that manner was, in legal effect, a representation to the bank that the deed executed to Loveless was a bona fide sale of the land described therein, and that the notes offered constituted a valid lien against the property. Under the rules of common law, one who sells a note or a lien impliedly warrants that the note or lien is what it purports to be—a valid instrument. Luse v. Beard (Tex. Civ. App.) 252 S. W. 243; Meyer v. Richards, 163 U. S. 391, 16 S. Ct. 1148, 41 L. Ed. 199; 8 C. J. 393, 397.

It is contended that the evidence conclusively shows that the deed to Loveless was never delivered. In a case of this character, where the title is not intended to pass, the failure to deliver the deed to the fictitious grantee is of no importance. It is sufficient if, by reason of the representations, the conduct of the grantor, or even through his negligence, the innocent third party is induced to believe that the deed has been delivered. In Steffian v. Bank, previously referred to, the

deed had been executed but had not been delivered to the grantee. Under the contract of sale the deed was not to be delivered till the grantee had paid all of the purchase money. Before payment the grantee secured possession of the deed, under the pretense that he wished to copy the field notes of the land. While having such possession, and without the knowledge or consent of the grantor, he exhibited the deed to a creditor, to whom he mortgaged the land described in the deed. In disposing of the controversy which arose, the court held that a delivery of the deed under those circumstances did not pass title to the grantee, but, if the grantor was guilty of negligence in thus putting it in the power of the grantee to deceive another to his injury, the grantor was thereafter estopped to say the deed had not been delivered. The failure to deliver the deed in such transactions as this may be a part of the scheme to simulate a conveyance. It can hardly be doubted, I think, that when the grantor in a fictitious deed deals with one as Kelley did, whom he knows is aware of the execution of the deed, his conduct is as much calculated to induce the party to believe that the deed expressed a bona fide sale of the property involved as if the deed had been placed of record. To now permit Kelley to prove that the transaction which he in that manner represented to be a bona fide sale was in fact a sham would, undoubtedly, enable him to profit by his own wrongful conduct. I know of no stronger grounds of estoppel in the decided cases than are presented by the facts of this case. Kelley's possession did not impose upon the bank the duty to inquire whether or not he was perpetrating a fraud in his efforts to negotiate the notes and lien which they described.

In Cameron v. Romele, above cited, Mrs. Romale conveyed the land to Maher, and on the same day the deed was recorded by Maher. On the day after the execution of the deed Maher sold the land to Cameron. Mrs. Romale was in possession at the time the second sale was made. In a suit against her by Cameron for the land, she defended upon the ground that the conveyance from her to Maher was procured by fraud, and relied upon her possession of the premises as notice of her equitable rights. In discussing the legal effect of possession, the court said:

"It has more than once been held by this court, and must now be regarded settled law, that, as a general rule, possession of real estate is constructive notice of the title of the possessor [citing cases]. But it is not to be inferred from these, or any other decisions of the court, that the bare fact of a continued possession of land for a time less than can reasonably be supposed for the vendor to remove from the premises, after the execution and record of deed, will charge a subsequent purchaser with a secret trust, whereby the deed, which was an apparent divestiture of the title of the vendor, was in fact inoperative, and, as between

themselves, of no effect whatever. Such a construction would be a virtual repeal of the registration laws, as well as the statute concerning fraudulent conveyances."

In this case only four days had intervened between the date of the deed and the assignment of the notes to the bank. That interval occurred about the middle of the month of December. The continued possession of the Kelleys during that time and under those circumstances might have been regarded by the jury as entirely consistent with an intention to later surrender possession and remove from the premises. If the fact of possession was, under those circumstances, such that it might not be sufficient notice of an undisclosed equity of the Kelleys, that issue of fact is settled against them by the findings of the jury.

But it is said that even if Kelley is estopped by his dealings with the bank, his wife was not. It is true that Mrs. Kelley was not present when her husband was negotiating for the loan. But the record clearly shows that all that Kelley did was done with her knowledge and consent, if not at her instigation. She concurred with her husband in the desire for the loan and the purpose for which the money was to be used. She shared in the benefits of the loan after it had been secured. She seems to have taken the initiative in executing the sham sale to her father. She wrote the deed, and was the first to appear before the notary to acknowledge it. She took charge of the deed after its execution, and later, as a deputy clerk, entered it upon the records. She recorded the written assignment of the notes, lien, and superior legal title within a few hours after that assignment had been made. From the evidence the trial court had a right to conclude that she fully understood, concurred in, and consented to every act of her husband in securing the loan. All that Kelley did in completing the entire scheme was done with her knowledge and consent. Without her co-operation the fictitious sale could not have been made and the loan could not have been secured. She had an opportunity to inform the bank officials of the true nature of the transaction with her father, and failed to give such notice at a time when she had every reason to believe the bank officials were relying upon the bona fides of the conveyance, and were taking the notes as security for a loan. If the scheme was a fraudulent one, she is undoubtedly a party to the fraud.

In Alstin v. Cundiff, the wife had been deceived by her husband into executing an absolute deed which was to be used secretly by the husband in a scheme to incumber the homestead. Yet the court held that, as against an innocent party who relied on the deed which she had executed, the wife was estopped. Certainly in that case the wife had more grounds to escape an estoppel than Mrs. Kelley can claim in this case.

It is contended that the appellee bank cannot, in this proceeding, invoke an estoppel against appellants, because the bank failed to plead such estoppel. The bank was not required to anticipate the special defense here relied on to defeat the enforcement of the lien on the land. The appellants, having alleged that the sale of the land was simulated and that the entire scheme was known to the bank, assumed the burden of proving those facts. Boswell, et al. v. Pannell, 107 Tex. 433, 180 S. W. 593. The bank alleged, in its original petition, that it acquired the notes before maturity and upon the payment of a valuable consideration, and offered evidence tending to prove those facts. It then devolved upon the appellants to allege and prove such facts as would defeat the right of the bank to enforce the lien described in the notes thus acquired. Prouty v. Musquiz, 94 Tex. 87, 58 S. W. 721, 996.

In their special answer the appellants alleged, in substance, as follows: That the land involved in the controversy was their homestead at the time of the transaction with Loveless, and had been such continuously thereafter. Just prior to the execution of the deed to Loveless, Kelley had applied to the bank for a loan of $5,400 and offered to execute a deed of trust upon his homestead. That it was agreed between him and the officers of the bank that such an instrument would be invalid upon its face. That, in order to create a lien which would be apparently good, the sale to Loveless and the execution of the notes substantially as was thereafter done, reserving a lien, was agreed upon, and that scheme was carried out with the full knowledge and consent of the bank; and that the bank was fully cognizant of the transaction at the time it accepted the notes. In reply to that the bank filed a general denial and further alleged that it was the holder and owner of the notes before maturity, for a valuable consideration paid to the appellants, and was without notice of any condition of defeasance which would render the notes and lien void. Those pleadings were, I think, sufficient to enable the bank to rely upon the estoppel presented in this case.

I think the judgment should be affirmed.

### On Appellee's Motion for Rehearing.

WILLSON, C. J. [4] After further consideration of the record in connection with the motion, the majority of the members of this court think the appeal was properly disposed of when the judgment of the trial court was so reformed as to deny appellee a foreclosure of the lien it asserted on appellants' homestead. If the conclusion reached, that there was nothing in the record showing appellant Olive Kelley "to have done or said anything appellee was entitled to claim excused it from

making inquiry to ascertain by what claim of right she was in possession of the land," was erroneous (and the majority do not think it was); it is thought the further conclusion that appellee "was not entitled to invoke the doctrine of estoppel as against her" was nevertheless correct, because appellee had no pleading setting up estoppel as a defense against appellants' claim of homestead. McMahan v. Bank (Tex. Civ. App.) 160 S. W. 403.

The motion is overruled.