GUARANTY BOND STATE BANK OF MT. PLEASANT v. KELLEY et ux.
(No. 985–5137.)

Commission of Appeals of Texas, Section B. Feb. 6, 1929.

J. A. Ward, of Mt. Pleasant, for plaintiff in error.

T. O. Hutchings and Sam Williams, both of Mt. Pleasant, for defendants in error.

SPEER, J.  This case involves a question of estoppel to assert the homestead exemption against the foreclosure of a lien asserted by the Guaranty Bond State Bank of Mt. Pleasant against W. L. Kelley and wife. The Court of Civil Appeals for the Sixth District [2 S.W.(2d) 572], in a majority opinion, reformed the judgment of the trial court so as to deny to the bank a foreclosure of its lien, while Justice Hodges dissented, indicating the view that the plea of estoppel should have been sustained and the lien foreclosed. We agree with the conclusions announced by Justice Hodges. And we further hold against the majority on rehearing, that estoppel was well pleaded. The ultimate decision of the point turns upon the effect to be given to the continued possession of the property by Kelley and wife after they had executed a deed conveying the same to Q. S. Loveless, father of Mrs. Kelley, and had taken from him notes secured by the vendor's lien purchased, owned, and sought to be foreclosed by the bank. Perhaps the earliest case to announce the rule of estoppel where the one sought to be estopped has remained in possession of the land involved is Eylar v. Eylar, 60 Tex. 315, which is cited and considered in both the majority and dissenting opinions in the Court of Civil Appeals. In that case the Supreme Court defined the effect of possession as notice and the extent of diligence, which it imposed in the following words: "It would seem that the sole office which possession performs, in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made."

It was held, in that case, that after being charged with notice through such possession, the purchaser was required to go no further than to ascertain that a deed from the parties in possession had been duly registered in the county clerk's office of the proper county; the court saying at this point: "We are of the opinion, under the facts in this case, that a purchaser from O. A. Eylar was not bound to inquire of the appellees what right they had in the land; that the inquiry was sufficiently prosecuted; prosecuted as far as a prudent man, having a due regard to the rights of others, and to his own protection, would be bound to prosecute it, when he looked to the record and there found that O. A. Eylar was declared by the very persons in possession to be the true and absolute owner of the land."

Now in this case defendants in error were at all times in possession of the property, and therefore the bank, in acquiring the notes and lien in controversy, was charged with the duty of inquiring as to the rights by which they were in such possession. It is undisputed that at the time he acquired the notes and lien the deed to Loveless, in which the lien was retained, had not been filed for record. If it had been, in the absence of further evidence of knowledge, the case would be identical with that of Eylar v. Eylar. But it is also undisputed that the bank had actual notice of the execution by Kelley and wife of the deed to Loveless, and this, we take it to be, satisfied every demand of further diligence to inquire. The suggestion has been made that no delivery of the deed has been shown, and, in the absence of a delivery, no deed or lien was complete, and the bank's case should fail. It is true delivery is an indispensable part of the execution of a deed, without which neither the deed nor the lien attempted to be retained therein can exist. But it does not follow that estoppel would not lie against the defense of homestead. An attempted lien upon the homestead which is forbidden by law is void and can never be made valid. Where such a pretended lien is enforced upon an estoppel, the attempted lien is not thereby made valid, but the recovery is permitted because the one pleading such invalidity is estopped by his conduct to assert the truth, the effect of which is to defraud and damage another. The rule announced in Eylar v. Eylar and in numerous cases following it is controlling in this case. It was clearly held there that due diligence was exercised by the prospective purchaser when he found upon the record of the proper county a conveyance by those who claimed their possession to be notice of rights adverse to the deed. The holding in that case necessarily involved the conclusion that a delivery of the deed had been made, else there would have been no registration thereof. The registration of a deed is not necessarily, or at all, conclusive upon execution or delivery, but it has been held to satisfy the requirement as

to diligence upon the part of a purchaser thus charged with notice. So in this case, while there was no registration, the execution, including delivery, of the deed has been brought to the knowledge of the purchaser by as strongly presumptive evidence as registration could be. Here, both husband and wife appeared before an officer or employé of the bank and acknowledged the deed, reserving the vendor's lien to secure the notes in controversy, and the notes themselves were found by the bank in the possession of the defendants in error, and they were duly assigned by them as owners thereof to the bank. All this certainly amounted to prima facie evidence of a complete delivery of the deed whereby the lien held by the bank was secured. The evidence of delivery in this case is as strong as that arising from the mere fact of registration of the deed.

It was suggested in the arguments that Mrs. Kelley could not be estopped by anything short of an actual fraud affirmatively committed by her, and it is argued that the fraud of the husband, who consummated the deal with the bank, could not be imputed to her. The principles thus contended for are sound; but that fraud which will estop a married woman is not necessarily intentional fraud, but rather any intentional affirmative act of hers which operates as a legal fraud, whether so intended or not, will estop her. Here Mrs. Kelley contributed in an active, affirmative way, to the perpetration of a legal fraud. Her intentions may have been, and no doubt were, perfectly harmless and with no actual purpose to wrong any one. But in law her conduct amounted to an affirmative representation that she and her husband had, in good faith, conveyed the homestead and reserved the lien thus assigned to the bank. To permit her now to plead the invalidity of the transaction would be to permit a legal fraud. Having actual notice of the execution of the deed retaining the lien, the measure of plaintiff in error's diligence was complete, and it was under no obligation to make further inquiry of defendants in error. It is ill-becoming defendants in error to insist that the bank, to whom they have thus represented that a sale of their home has been made, should make further inquiry of them or either of them if the transaction had been in good faith. The bank had a right to rely upon the truth of the facts thus represented to it. The principle is settled in Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, wherein it was held that one who innocently had made false representations inducing another to act would not be heard to say that such other should have pursued the inquiry by the means at hand to ascertain the falsity of the representations.

We recommend that the judgment of the Court of Civil Appeals wherein it denied the plaintiff in error a foreclosure of its lien should be reversed, and judgment be here rendered in favor of plaintiff in error upon such issue, and that otherwise the judgments of the trial court and of the Court of Civil Appeals should be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reformed, so as to award a foreclosure of lien to plaintiff in error, and as reformed that judgment and the judgment of the district court are affirmed, as recommended by the Commission of Appeals.