**HESTER et ux. v. KEMPER MILITARY SCHOOL.**

No. 14061.

Court of Civil Appeals of Texas. Fort Worth.

March 22, 1940.

J. R. Wilson, of Wichita Falls, for plaintiffs in error.

Ewing Clagett, of Wichita Falls, for defendant in error.

DUNKLIN, Chief Justice.

B. M. Hester and wife, Mrs. Mollie M. Hester, while residing in Wichita Falls, Texas, put their son, B. M. Hester, Jr., in the Kemper Military School, in Booneville, Missouri. At the close of the school year of 1931–1932, which was the boy's second year in the school, there was a balance owing to the school of $339.18.

On August 28th, 1932, B. M. Hester addressed a letter to Major A. B. Bates, vice president and superintendent of the school, at Booneville, telling him that he was very anxious for his son to finish another term in the school, and that he would make a sacrifice rather than have him miss another year. In that letter, he said that he was trading off a piece of residence property that cost him $9,125, and was taking, in consideration therefor, two notes, each in the sum of $1,250, due in one and two years after date, bearing interest at the rate of 10 per cent per annum; that the notes were well secured, and the title to the property was good; that the notes would stand the closest inspection, both as to value of the property and to validity of the title; and offering to sell the notes, in order to realize the money necessary to continue the boy in school. Major Bates then wrote Hester, calling his attention to the balance then due of $339.18, for the previous year, and that a charge for another year for the schooling would be $950, making a total of $1,289.18. He then offered to accept Hester's note for $1,289.18, with the two $1,250 vendor's lien notes mentioned in Hester's letter as collateral security, provided those collateral notes were secured by first mortgage on the property mentioned in Hester's letter.

That proposal was accepted by B. M. Hester, and pursuant thereto, he, joined by his wife, Mrs. Mollie M. Hester, executed to E. Cardwell, a resident citizen of Wichita Falls, a deed of conveyance, of date September 1st, 1932, with general warranty of title, to Lot 10, Block 78, Floral Heights Addition to the City of Wichita Falls. The consideration recited in that deed was $10 and other good and valuable considerations paid by E. Cardwell, and the execution and delivery by E. Cardwell of his two promissory vendor's lien notes, of even date with the deed, each in the sum of $1,250, payable to B. M. Hester, or order, at Wichita Falls; note No. 1 being payable one year after date, and note No. 2 payable two years after date, each note

bearing 10 per cent interest from date, and containing the customary 10 per cent attorney's fee collection clause. That deed was duly acknowledged by the grantors, in statutory form. At the same time, and as a part of the same transaction, E. Cardwell executed and delivered to B. M. Hester the two vendor's lien notes recited in the deed, and also a deed of trust securing their payment. That deed was filed for record in the Deed Records of Wichita County, on October 11th, 1934.

B. M. Hester then executed his promissory note, of date September 6th, 1932, payable to the order of the Kemper Military School, Booneville, Missouri, for the sum of $1,289.18, payable June 1st, 1933, with interest from date at the rate of eight per cent per annum, reciting the hypothecation of Cardwell's two vendor's lien notes as collateral security therefor. That note, together with Cardwell's two vendor's lien notes, and the deed of trust executed to secure the same, were all mailed to Major Bates on September 9th, 1932, and on September 12th, Major Bates, in a letter to Hester, acknowledged receipt of those instruments, saying that they were received in payment of the balance due of $339.18, for the preceding school year, and a charge of $950 for the next succeeding school year.

The boy then finished his third year in the school.

Nothing was paid on either the principal or the collateral notes.

On September 1st, 1934, E. Cardwell executed his note, payable to B. M. Hester or order, in the sum of $3,000, reciting that it was in renewal of his two original vendor's lien notes for $1,250 each, and secured by a vendor's lien reserved in said deed to him by B. M. Hester and wife, and that the $3,000 renewal note was to cover the principal and interest then owing on those two notes. That note was due and payable September 1st, 1935; and on the back thereof was this endorsement:

"Vendor's Lien Note. For Value Received I hereby sell, transfer and assign to Kemper Military School as Collateral the within note, together with the vendor's lien and deed of trust lien on the property securing same, and as endorser, I guarantee the payment of the within note at maturity, or on demand at any time after maturity, waiving demand, protest and notice of non-payment thereof.

"(Signed) B. M. Hester."

On the same date E. Cardwell executed a renewal of the former deed of trust theretofore given to secure the two original vendor's lien notes. Those renewals were then delivered to B. M. Hester, who, on September 6th, 1934, executed a renewal of his original note, in the sum of $1,503.66, payable September 6th, 1935, and reciting the hypothecation of the renewal note and deed of trust of E. Cardwell, as collateral security therefor. All those renewals were then mailed to Major Bates.

All of the negotiations heretofore related were by correspondence between B. M. Hester, at his home in Wichita Falls, Texas, and Major Bates, in Booneville, Missouri; the latter having never inspected the property covered by the lien and having no representative in Wichita Falls to act for the school in those negotiations.

Nothing having been paid on any of the renewal notes, the Kemper Military School, a foreign corporation, instituted this suit, on February 17th, 1937, against B. M. Hester and wife, Mollie M. Hester, and E. Cardwell, for personal judgment against B. M. Hester and E. Cardwell, for the amount due on those renewal notes, according to their legal tenor and effect, and against all of the defendants for foreclosure of the vendor's lien and deed of trust lien on the above described property.

Neither B. M. Hester nor E. Cardwell filed any answer to plaintiff's petition, but Mrs. Mollie M. Hester filed her answer, alleging that the property covered by the deed to E. Cardwell has been the homestead and used and occupied as such by her and her husband, B. M. Hester, for approximately 17 years; that said deed was intended as a mortgage, and so understood between all the parties thereto, and that she had never received any consideration therefor, and that said deed was therefore void. And further, that she had never represented to any one that she was making an absolute deed. The answer concluded with a prayer that the purported liens on her said homestead be removed as a cloud upon her title.

In reply thereto, plaintiff filed a first supplemental petition, reciting the negotiations noted above, which culminated in the execution and delivery to it of the original notes and deeds of trust above referred to, and the renewal thereof, all of which were accepted by plaintiff in good faith and without knowledge or notice of the facts relied on by Mrs. Hester to defeat the lien; that

plaintiff is an innocent holder of said note and lien securing it, and became the legal and equitable owner and holder thereof for value, without notice of any infirmity in said transaction. It was further alleged that all the defendants knew at the time of said transaction that plaintiff was an out of the state concern and would rely upon the representations of Hester, which induced the acceptance of said instrument; and that if, as alleged by Mrs. Hester, the property was, at the time, the homestead of herself and family and the deed intended merely as a mortgage, then all of said transactions were false and fraudulently made for the purpose of defrauding the plaintiff out of the said sum of $1,289.18, and defendant Mollie M. Hester is estopped from now asserting that the deed was intended only as a mortgage. Plaintiff further alleged that the renewal notes were executed and delivered to plaintiff after the renewal deed of trust had been duly filed in the Deed of Trust Records of Wichita County, Texas.

The trial of the case was to a jury, and upon a hearing it was agreed between the parties that the property in question was used and occupied as and was the homestead of B. M. Hester and wife at the time of their execution of the deed to Cardwell, and that said property is still used and occupied by them as their homestead.

The undisputed testimony of Major A. B. Bates, as shown in his depositions, was that he was vice president and treasurer of the Kemper Military School and, in behalf of that school, conducted all of the negotiations recited above, culminating in the acceptance of the notes; that he, in good faith, believed and relied upon the truth of all the representations made by B. M. Hester, and by E. Cardwell in the instruments they executed; that the collateral notes, both original and renewal, were secured by valid liens upon the property, and he was induced thereby to extend credit for the balance owing by B. M. Hester for the boy's second school year, and to give him the schooling for the third year; that he had accepted the collateral notes before their maturity, without any notice of any vice or infirmity therein. Witness further stated that since the maturity of the original notes, he had written B. M. Hester some eighteen letters, and until Mrs. Hester filed her answer to the suit, on March 2nd, 1937, he had never heard of any claim made that the property

was the homestead of herself and husband, or that the deed given by her and her husband was merely a simulated transaction and intended only as a mortgage.

Mrs. Hester testified that she signed the deed to Cardwell under the belief that it was a kind of a mortgage, and just depended on her husband, and thought that her husband would take care of it, but knew that it was for the purpose of raising money to pay for her son's schooling, but she did not claim that she notified any one, even the notary who took her acknowledgment to the deed, that that was her understanding.

The case was tried to a jury, and the following are issues submitted and the jury's findings thereon:

"No. 1. Do you find from a preponderance of the evidence that plaintiff, Kemper Military School, was an innocent holder of the two collateral notes for $1250.00 each dated September 1st, 1932, against Lot 10, Block 78, Floral Heights Addition to the City of Wichita Falls, Texas? Answer 'yes' or 'no'. Answer: Yes.

"No. 2. Do you find from a preponderance of the evidence that Mrs. Hester knew at the time she joined her husband in the execution of the deed to E. Cardwell that the vendor's lien notes named in the deed were to be used to finance another year's schooling for B. M. Hester, Jr. at Kemper Military School? Answer 'yes' or 'no'. Answer: Yes.

"No. 3. Do you find from a preponderance of the evidence that Mrs. B. M. Hester represented to the plaintiff that said notes executed by E. Cardwell were valid liens on the property in question? Answer 'yes' or 'no'. Answer: Yes.

"No. 4. If you have answered 'no' to the above issue, you need not answer this; but if you have answered same 'yes', then,

"Do you find from a preponderance of the evidence that Kemper Military School relied upon such representations, if any, in accepting the collateral notes? Answer 'yes' or 'no'. Answer: Yes."

Judgment was rendered in favor of the plaintiff against defendant B. M. Hester for the sum of $2,338.90, with interest from date at the rate of eight per cent per annum, and costs of suit, with a foreclosure of the vendor's lien as it existed on September 1st, 1932, and now exists, on lot 10,

block 78, Floral Heights Addition to the City of Wichita Falls, as against all the defendants, and that said property be sold under execution and the amount realized from said sale be applied to the satisfaction of said judgment, and if there be an excess amount more than sufficient for that purpose, that the same be paid over to the defendants B. M. Hester and Mollie M. Hester. The judgment further recites that the defendants B. M. Hester and E. Cardwell, though duly cited, had failed to answer, and that as to them the judgment was by default.

From that judgment Mrs. B. M. Hester has prosecuted this writ of error.

The three propositions presented in briefs of plaintiffs in error are as follows:

"1. Where the husband and wife reside in a home at the time of the execution of the mortgage, and where they continue to reside in it as their homestead, no representations by the husband and wife that the purported lien executed on the premises is valid, and therefore the wife is not estopped from pleading the invalidity of the lien.

"2. The wife is not estopped to plead the invalidity of the lien on the homestead unless she, knowingly, by act or deed, induced the holder of the purported lien to take such lien and represented that such lien was valid.

"3. In order for the defendant in error to establish innocent purchaser of the two $1,250.00 purported vendor's lien notes, it is necessary that a valid consideration be then paid for said notes, and not a future nor past consideration be paid."

Article 16, section 50, Constitution of Texas, Vernon's Ann.St., reads: "The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, * * * nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created

by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

Eylar v. Eylar, 60 Tex. 315, was a suit by J. F. Eylar and wife to cancel a deed made by them to O. A. Eylar, on the ground that same was intended as a mortgage to secure payment of a debt then owing by the grantors. After he had acquired that deed, O. A. Eylar conveyed the property to Mrs. Ann A. Eylar, who paid a valuable consideration therefor, without actual notice that the deed to O. A. Eylar was a simulated sale, intended to operate only as a mortgage, and it was held that she was entitled to protection as an innocent purchaser, notwithstanding the fact that when J. F. Eylar and wife executed the deed to O. A. Eylar, he was in open possession of the property as his business homestead, and therefore within the protection of Article 16, section 50, of the Constitution of Texas. In the opinion this was said:

"It would seem that the sole office which possession performs, in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made.

"The policy of the law, as evidenced by our statutes, requires all conveyances of land or interests therein for a term longer than one year to be evidenced by writing, and when parties place, in this the most certain and enduring form, the evidence of their right, they ought to be held, so far as third persons are concerned, to have therein spoken truly in respect to the title to the land to which the conveyance relates.

"That all persons who may deal with persons claiming land may have the means of knowing in whom titles to land rest, and that no one may buy what appears to be a good title, when another person may have better right not made public, the law requires all persons, for the protection of innocent purchasers and creditors, to register their titles to land.

"Such being the case, can it be said, even if possession is sufficient in all cases to put purchasers upon inquiry, that such inquiry is not prosecuted sufficiently far, when the person who desires to buy examines the records of the county and finds on record a deed from the person in possession to the person who offers to sell, and who under that deed asserts title.

"If the inquiry is prosecuted to the highest source which the law of the land declares shall exist for the determination of title, and to the source which the parties have created as the highest evidence of their respective rights, can it be true that it is further necessary to examine sources inferior and make inquiry as to whether or not there are claims, or even rights, in others not evidenced as the law requires, or otherwise the purchaser be charged with constructive notice of secret vices in the title which he buys.

\* \* \*

"By the deed in question, the parties who now assert claim through a secret agreement declared in the most solemn form that the land in controversy was the property of O. A. Eylar; they permitted that declaration to be placed on record for the very purpose of giving information to all persons as to the true ownership.

"Such being true, can the simple fact that they remained ·in possession of the land which they had declared belonged to another, which they might lawfully do as the tenants at sufferance or otherwise of such other person, make it requisite for any person who may desire to buy from the person whom they have so declared to be the owner, to inquire of themselves whether or not they had uttered the truth in their deed, whether or not their own declaration was false?

"We are of the opinion, under the facts in this case, that a purchaser from O. A. Eylar was not bound to inquire of the appellees what right they had in the land; that the inquiry was sufficiently prosecuted; prosecuted as far as a prudent man, having a due regard to the rights of others, and to his own protection, would be bound to prosecute it, when he looked to the record and there found that O. A. Eylar was declared by the very persons in possesion to be the true and absolute owner of the land."

Many subsequent decisions have followed that announcement in the Eylar case, among which are: Love v. Breedlove, 75 Tex. 649, 13 S.W. 222; Graves v. Kinney, 95 Tex. 210, 66 S.W. 293; Still v. Moffett, Tex.Civ.App., 93 S.W.2d 756; Strauss v. Friedman, Tex.Civ.App., 109 S.W.2d 553; Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258; Guaranty Bond State Bank v. Kelley, Tex.Com.App., 13 S.W.2d 69; Little v. Shields, Tex.Com.App., 63 S.W.2d 363; Noel v. Clark, 25 Tex.Civ.App. 136, 60 S. W. 356, writ refused; National Bond & Mortgage Corp. v. Davis, Tex.Com.App., 60 S.W.2d 429. And in the case last cited it was said that the decision in Eylar v. Eylar, supra, had become a rule of .property.

Texas Land § Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12, 13 was a suit to foreclose a mortgage given by a husband and wife on property they were then occupying and using as their homestead. To defeat the homestead defense, the lender 'relied upon the declaration of the borrowers contained in the mortgage they gave, that the property was not claimed by them as their homestead. In the opinion, written by Judge Stayton, who was also author of the opinion· in the Eylar case, ·this was said:

"The fact of actual possession and use, as the home of the family, was one against which the lender could not shut its eyes; and this fact, coupled with the interest held by the borrower in the land, made the property homestead in fact and in law, on which the constitution declares no lien, such as claimed in this case, can exist.

"Every person dealing with land must take notice of an actual, open, and exclusive possession; and where this, concurring with interest in the possessor, makes it homestead, the lender stands charged with notice of that ·fact, it matters not what declarations to the contrary the borrower may make.

"It has been held that one remaining in possession of land, after having executed and permitted to be placed on record an absolute conveyance, could not rely upon his possession as notice of a secret agreement that the absolute conveyance, as between the parties to it, was only intended as a mortgage, and thus defeat the ·right of ·a subsequent innocent purchaser.

"That, however, is not this case. Here nothing was hidden; possession was open, certain, and in character in no respect ambiguous. It was such as gave homestead right, and the lender cannot be heard to say that it did not know it.

"The constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender, who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife, made orally or in writing,

838

contrary to the fact. To hold otherwise would practically abrogate the constitution.

"If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead, contrary to the fact, will enable parties to evade the law, and incumber homesteads with liens forbidden by the constitution. Mortgage Co. v. Norton, 71 Tex. 683, 10 S.W. 301; Pellat v. Decker, 72 Tex. [578], 581, 10 S.W. 696; Kempner v. Comer, 73 Tex. [196], 203, 11 S.W. 194."

Those authorities clearly distinguish the rights of a subsequent innocent purchaser of the lien or property from the rights of the lender who takes a mortgage to secure his loan, while the borrowers are openly occupying the property as their homestead, and against which actual possession and use the lender cannot close his eyes.

The following decisions are cited by plaintiff in error: Bayless v. Guthrie, Tex. Com.App., 235 S.W. 843; Hutchenrider v. Smith, Tex.Com.App., 242 S.W. 204; Llewellyn v. First Natl. Bank, Tex.Civ.App., 265 S.W. 222; Mosher Steel & Machinery Co. v. Nash, Tex.Civ.App., 6 S.W.2d 158. Those decisions, like the Blalock case, are distinguishable from the Eylar case and the case at bar on the facts involved.

 The findings of the jury, which are supported by competent evidence, that plaintiff was an innocent purchaser of the two collateral notes in controversy before maturity for a valuable consideration paid, support the judgment rendered. And it makes no difference that B. M. Hester's original principal note for $1,289.18 and the renewal thereof included the amount due for the preceding school year, as well as the amount to become due for the next succeeding year; since a past due indebtedness is a sufficient consideration for a negotiable instrument. Arts 5933 and 5935, Vernon's Tex.Civ.St. And the notes given by E. Cardwell to B. M. Hester and acquired by plaintiff as a holder in due course, were hypothecated for that indebtedness.

Nor did Mrs. Hester file a plea of lack of consideration for those principal notes.

For the reasons noted, all assignments of error are overruled, and the judgment of the trial court is affirmed as to all parties to the suit.