W. W. Evans et al. v. C. J. Daniel et al.

Decided February 27, 1901.

**1.—Homestead—Vendor's Lien Note—Notice.**

The owner of a homestead exchanged it for an undivided interest in other improved land but executed notes apparently, but not in fact, given for and secured by vendor's lien on the land so acquired, which notes a purchaser bought, with knowledge of this fact, before the new property was occupied by their maker. On the issue of the right to restrain a sale of the land to satisfy the lien, on the ground that it was homestead, the holder of the notes was entitled to an instruction protecting him in his lien as an innocent purchaser if he bought without notice of or outward act manifesting the maker's intention to occupy the land as homestead.

**2.—Judgment by Default—Res Judicata.**

A judgment by default on a vendor's lien note was conclusive as to the amount of the debt in a subsequent action between the parties involving the validity of the lien as against a claim of homestead rights.

**3.—Homestead—Designation—Intention.**

Though one claiming homestead rights had not taken possession of the land at the time the lien sought to be enforced against it attached, his intention to do so, if known to the person acquiring the lien, entitled him to the exemption, where the property was already improved and capable of being a residence, this circumstance distinguishing the case from West End Town Company v. Grigg, 56 Southwestern Reporter, 49.

**4.—Same—Husband and Wife.**

The husband alone has the right to designate the homestead, and the intention which will entitle to claim the exemption in the absence of actual occupancy must be his, and not that of the wife.

Appeal from McLennan, Nineteenth District. Tried below before Hon. Marshall Surratt.

*Jones & Sleeper* and *H. N. Atkinson,* for appellants.

*Boynton & Boynton* and *S. E. Stratton,* for appellees.

KEY, Associate Justice.—Appellees C. J. Daniel and wife brought this action against W. W. Evans, Charles Evans, and J. W. Baker to restrain the sale of 140 acres of land, alleged to be the plaintiff's homestead. Baker was sued as sheriff, and the other parties as asserting a contract lien on the alleged homestead. A judgment was rendered for the plaintiffs, and the defendants Evans have appealed.

Daniel and his wife owned a homestead consisting of 121 acres of land, incumbered by a valid lien of $2500. Daniel made a verbal contract with J. E. Parker to exchange his homestead for an undivided interest of 140 acres in a tract of 297 acres of land, Parker assuming the payment of the $2500 incumbrance on the Daniel homestead. Subsequently Parker and other co-owners conveyed the undivided 140 acres of land to C. J. Daniel, and C. J. Daniel and his wife conveyed the 121 acres of land to Parker. At the same time, C. J. Daniel executed two promissory notes, payable to the order of J. E. Parker, each bearing interest at 10

per cent per annum, one for the sum of $2000 payable three years from date; and the other for the sum of $1513.55 payable four years from date, and each reciting that it was given in part payment for the 140 acres of land. The deed from Parker to Daniel recited the execution of these two notes as part of the consideration for the land, and expressly reserved a lien thereon to secure the payment of the notes. At the same time, and as part of the same transaction, Parker indorsed the notes without recourse, and they were delivered by Daniel to the defendants W. W. and Charles Evans. As a matter of fact, the notes were not given for any part of the consideration for the 140 acres of land, nor for any other consideration coming from Parker; and W. W. and Charles Evans had notice of that fact when they obtained the notes. There is conflict in the evidence as to how and for what purpose the defendants obtained the notes; but there is testimony tending to show that they purchased the $2000 note, paying therefor the sum of $2000, and took the other note as collateral security for the $2000 note. The money so obtained on the notes was not used for the purpose of rendering the land available as a homestead, nor for any other purpose connected with the land. At the time in question, the plaintiffs were not in possession of the 140 acres of land so acquired from Parker, but they submitted testimony tending to show that they had no other homestead; that they acquired the land in question intending it as their homestead. They did not take possession of it until about four years after they bought it, but submitted testimony tending to excuse themselves for not doing so. They bought it in December, 1895, but it had already been leased for the year 1895. The most of the entire 297-acre tract, of which the 140 acres in question was part, was in cultivation, but had only one small house upon it. It was not divided between the plaintiffs and their cotenants until the winter of 1898 and 1899; and thereafter Daniel built a house on the 140 acres set aside to him in the partition, moved into it, and occupied the land ever since as a homestead. However, the house was built and occupancy commenced after this suit was brought.

There was some other testimony tending to explain why appellees did not take possession of the land sooner. Among other defenses interposed by appellants, the Evanses, was that of innocent holders of the notes referred to.

We sustain the assignment of error complaining of the action of the court in refusing appellants' special charge instructing the jury that if the notes were transferred to appellants and appellees had not occupied the property as a home, nor done any outward act in reference thereto manifesting their intent to do so, and if when appellants acquired the notes they had no notice of appellees' intention to occupy the land as a home, the jury should find for defendants on the homestead issue. There is no dispute in the evidence that at the time the Evanses acquired the notes appellees had not taken possession of the 140 acres of land, nor done any outward act manifesting their purpose to do so, and whether or not the Evanses had notice of appellees' intention as testified to by

them of making the property their homestead, was a question upon which the testimony was in conflict. Appellee C. J. Daniel testified that W. W. Evans knew of his intention to use the land as a home; that he talked to him about it. W. W. Evans contradicted Daniel's statement, and testified that he never heard, until this suit was brought, that Daniel and his wife claimed the land in controversy as a home. He also testified that he bought the $2000 note, paying therefor the sum of $2000, which he held for investment, as the agent of his brother and coappellant, Charles Evans, and that he took the other note as collateral security for the $2000 note. This evidence, in connection with the facts already referred to, raised the issue of innocent purchaser of the notes, and the court erred in refusing the special instruction asked upon that subject. Love v. Breedlove, 75 Texas, 652; Heidenheimer v. Stewart, 65 Texas, 323.

We also think that the court erred in not holding that the former judgment by default against C. J. Daniel was conclusive as to the amount of his indebtedness to Evans. Under the facts disclosed by the record, we think that the court had the power to render that judgment, and no sufficient reason is made to appear for not holding it to be binding upon the parties thereto.

In reference to the question of homestead, presented under several assignments of error, our conclusion is that the court committed no error in refusing special charges numbers 2 and 7 requested by appellants. These charges, in substance, announced the proposition of law that as appellees had not taken possession of the land in controversy at the time the notes were executed, the lien reserved in the notes was valid, notwithstanding the defense of homestead now asserted by appellees. The case of West End Town Co. v. Grigg, 93 Texas, 451, 56 Southwestern Reporter, 49, is particularly relied upon by appellants in support of their contention. As presented in the record, we do not think this case entirely analogous to the Grigg case. In our opinion, if N. C. Daniel intended at the time he acquired the land to make it his homestead, and if it was then in a condition to be occupied by him as a homestead without any further improvements being made thereon, and if he can give a reasonably satisfactory excuse for not having taken possession of it earlier. and show that he has in fact taken possession of it as a homestead and that his intention to do so continued from the time he acquired it until he took such possession, then it was his homestead from the very moment the title vested in him; and being homestead at that time, no lien could then be created upon it by contract then or subsequently made, except for purchase money or improvements. In the Grigg case at the time the lien was created the property was unimproved and could not be used as a home, and the mere intention to thereafter improve it and use it as a home did not make it homestead at that time.

We think it would have been proper to have instructed the jury as requested in appellants' sixth special charge, that the husband alone has the right to designate the homestead, and that unless the husband intends to

use the property as a homestead it will not be such, although it may be the expectation and intention of the wife that the property should become homestead.

On the other questions presented we rule against appellants, but for the errors pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*