### BERNSTEIN v. HIBBS et ux. (No. 2669.)

(Court of Civil Appeals of Texas. Amarillo. April 28, 1926. Rehearing Denied May 26, 1926.)

1. **Mechanics' liens** ⊙⟹73(2)—**Wife's ignorance that instruments she signed created mechanic's lien on homestead held no defense to foreclosure, where instruments were fully explained to her.**

Wife's ignorance that mechanic's lien contract and notes she signed created a lien on her homestead *held* no defense to a foreclosure of lien, where the instruments were fully explained to her, there was no concealment of facts in connection therewith, and she signed willingly.

2. **Mechanics' liens** ⊙⟹206—**Innocent purchaser of mechanic's lien contract and notes, may foreclose lien on homestead, though original transaction was simulated.**

Innocent purchaser of mechanic's lien contract and notes covering homestead may foreclose the lien, though the original transaction was simulated to obtain money to pay debts unconnected with homestead, as husband and wife are estopped.

3. **Mechanics' liens** ⊙⟹281.(1)—**Evidence held to show part of money obtained in alleged simulated transaction was expended on homestead.**

Where defendants claimed transaction in which contract and notes creating mechanic's lien on homestead were given was simulated, evidence *held* to show that at least part of the money obtained was expended for material used in the homestead.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit to recover on notes and to foreclose a mechanic's lien by Mrs. Annie Bernstein against Ralph Hibbs and wife. Judgment for plaintiff for amount of notes, but denying foreclosure of lien, and plaintiff appeals. Reversed and remanded.

Taylor, Muse & Taylor and Weeks, Morrow, Francis & Hankerson, all of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellees.

JACKSON, J. The appellant, Mrs. Annie Bernstein, a widow, instituted this suit in the district court of Wichita county, Tex., on December 13, 1924, against the appellees Ralph Hibbs and his wife, Alta Hibbs, to recover on certain notes, and to foreclose a mechanic's lien on lots Nos. 19 and 20 in block 5 of the Sibley Taylor Addition to the town of Wichita Falls, Tex., given to secure the payment of the notes.

Appellant alleged that on November 1, 1919, appellees executed and delivered the two mechanic's lien notes sued on to W. Lee Moore and J. A. Richolt, each in the principal sum of $1,000, each bearing interest at the rate of 10 per cent. per annum from date until paid, and payable at Wichita Falls, Tex., on or before two and three years after date, respectively, providing for the usual and customary 10 per cent. attorney's fees, and, to secure the payment thereof, on the same date executed and delivered to Moore and Richolt a mechanic's lien contract on the above-described premises; that on November 28, 1922, said notes and lien were, for a valuable consideration, transferred to appellant; that on December 4, 1922, the appellees and appellant entered into a valid agreement in writing, duly executed and acknowledged, extending the due date of said notes to November 1, 1924; that each of said notes were due and unpaid, with 10 per cent. accumulated interest thereon from November 1, 1923, and 10 per cent. additional as attorney's fees on the principal and the unpaid interest.

Appellees answered jointly by general demurrer and general denial.

Appellee Alta Hibbs pleaded coverture; that the property in controversy on November 1, 1919, was occupied, used, and claimed by herself and her husband as their homestead, and was still so occupied, used, and claimed; that the lien was void, because none of the material or labor mentioned therein was used, or intended to be used, on said premises; that the transaction was simulated on the part of her husband, Sam S. Thorp, W. Lee Moore, and J. A. Richolt, to enable her husband to borrow money to pay debts which had no connection with the homestead; that she was without business experience, and relied on her husband to advise her in business matters, and, at the time of the execution of the instruments, she was ignorant of their legal effect, and did not know they purported to create a lien against her

homestead; that she executed them at the direction and command of her husband, who concealed from her the facts relative to the true situation, and that she never learned that a lien was claimed against the property to secure the payment of the notes until this suit was filed; that all the facts were known to Thorp, Moore, and Richolt, and that appellant acquired said lien after the maturity of the notes, with full knowledge of the facts affecting the validity of the lien; that by virtue of said mechanic's lien a cloud was cast upon their title to said property, and asked that the cloud be removed.

Appellant, by supplemental petition, denied the invalidity of the materialman's contract, and asserted that the appellees received the benefit of a large quantity of labor and material advanced by reason of said contract, and that the balance of the money not used for labor and material in the completion of the home was used for discharging a vendor's lien against the premises, and appellant is subrogated in equity to the rights of the legal owner and holder of the original vendor's lien, as well as the materialman's lien. She set up the reasonable value of the material and labor furnished under the contract, and the amount paid on the vendor's lien notes, and urged that in any event she was entitled to recover for the reasonable value of the material and labor so furnished and the amount of the funds used in liquidating the vendor's lien note. She pleaded that appellees were estopped to deny the validity of the notes and lien, because they were advised by her agent of the contemplated purchase of the notes and lien, and that Ralph Hibbs informed her said agent that the lien was valid, and requested that, if the purchase was made, the notes and lien be extended, which request was granted; that appellee Alta Hibbs, by her words and acts, led the agent of appellant to believe the notes and lien were valid, and that by the silence, as well as by the words and acts, of appellees appellant was induced to believe that the money originally advanced on the notes and lien had gone into the improvement of the property, and that the lien was valid; that she is an innocent purchaser and entitled to recover the full amount of the principal, interest, attorney's fees, etc., and to a foreclosure of the lien.

The case was tried before the court without the intervention of a jury, and at the conclusion of the testimony appellant was given judgment against the appellees for the amount of the notes, interest, and costs, but denied a foreclosure of her lien, in which connection it was decreed that the asserted lien be removed as a cloud upon the title of appellee's property.

Appellant presents as error the action of the trial court in refusing to foreclose the materialman's lien against the lots involved in the controversy, as appellees were estopped to deny the validity of the lien, first, because the mechanic's lien contract and notes were regular, with no defect appearing therein, and appellees knew of appellant's contemplated purchase of the notes, relying on the validity of the lien, and gave no notice of any homestead claim or a simulated transaction; second, because the evidence, if not uncontradicted, shows by a great preponderance thereof that appellant's agent was advised by Ralph Hibbs that the lien was valid, and that both appellees, with full knowledge of the contemplated purchase of the notes and lien by appellant, by their silence, as well as their words and conduct, induced her to rely on the validity of the lien; and, third, because the undisputed testimony shows that appellees executed, acknowledged, and delivered an extension agreement to appellant on December 4, 1922, after her purchase of the notes and lien, without giving any notice of any fact that would affect the validity of the lien.

The notes recite that they are given in part payment for the construction of improvements on the lots in controversy and that an express contract and mechanic's lien is given to secure their payment. On each of the notes is a memorandum of the agreement to extend their due date, which also states the extension of the mechanic's lien. The materialman's lien contract recites that it is in consideration of furnishing lumber and material and constructing improvements on the lots involved in this suit, and gives an express contract lien to secure the payment of the money evidenced by the notes. The notes and lien were properly transferred to appellant on November 28, 1922, and on December 4th thereafter, by an agreement in writing between appellees and appellant, the due date of the notes was extended to November 1, 1924. This extension agreement refers to the mechanic's lien note, the mechanic's lien contract, the transfers thereof, and expressly extends the contract lien given to secure the payment of the notes. The notes and memorandum referring to the extension agreement were signed by both the appellees. The mechanic's lien contract and the extension agreement were signed and acknowledged by each of them in the joint statutory form required for husband and wife. The record contains no testimony that Ralph Hibbs directed or commanded his wife, Mrs. Alta Hibbs, to sign or acknowledge any of these instruments, nor that he concealed from her any facts in connection therewith. There is no contention that the acknowledgment of Mrs. Hibbs to the contract and to the extension agreement were not taken privily and apart from her husband, or that the instruments were not fully explained to her, or that she did not sign them willingly without any desire or purpose to retract.

The record makes it certain that Mr. Hibbs knew of the negotiations by appellant's agent

for the purchase of the notes and lien; that he went on the premises and inspected the property for that purpose. The testimony of the agent is to the effect that, when he called to inspect the property, he told Mrs. Hibbs that he was figuring on buying the materialman's notes, and she told him "all right," invited him in, and showed him through the house. This testimony is not denied by Mrs. Hibbs, but says she expects she did show him through the house, but that, if he said anything about the lien, she did not hear it, and would not have known what he was talking about if she had.

[1,2] There is some testimony of a simulated transaction between Ralph Hibbs and the original parties to the notes and materialman's lien, but all the instruments relative to the transaction are regular, and carry no recitation that would put a purchaser on notice or require any investigation as to their validity. It is true that the notes were past due when they were transferred to appellant, but the first was credited with three partial payments, and during the negotiations for the purchase and transfer to appellant, and at the time of the extension agreement, no question was made about the bona fides of the original transaction.

No attack is made on the regularity of any of the instruments, and no issue raised by the testimony of any fraud in the execution thereof. Mrs. Hibbs testified that she did not know that the instruments created a lien against her homestead, but, as to appellant's rights under these instruments as revealed by this record, the want of such information would not relieve her of the obligations expressed in the instruments over her signature. Shear Co. v. Smith (Tex. Civ. App.) 250 S. W. 727; Parker et al. v. Schrimsher et al. (Tex. Civ. App.) 172 S. W. 165; McGaughey et al. v. American National Bank of Austin (Tex. Civ. App.) 92 S. W. 1003; Scottish-American Mortgage Co., Limited, v. Scripture et al. (Tex. Civ. App.) 40 S. W. 210.

"If the owners of the homestead simulate a transaction, in which a negotiable note would be secured by a valid and meritorious lien on the exempt estate, and their artifice succeeds in imposing upon an innocent party, they are estopped from denying the truth of their solemn statements, and cannot be permitted to prove that a lien their acts declared to be valid is void because their acts were false." Heidenheimer Bros. v. Dennis Stewart et ux., 65 Tex. 321.

"It is plain, therefore, that no right to the property ever vested in McLaurin, and no lien upon it, good against Mrs. Graves, as between the parties, ever arose. But to the purchaser of the note the papers executed by all the parties presented a transaction in which there was a regular and lawful sale of the homestead, in which the cash installment of the purchase money had been paid, and the remainder was secured by the note, with a valid lien on the property, and the question is whether the court, in ascertaining his rights, should look behind

the evidence of their rights which the other parties had thus created, and upon which he acted, or should, in his favor, hold them to the transaction as they had made it appear to be. The decisions of this court have, it seems to us, settled the question in favor of the purchaser. Hurt v. Cooper, 63 Tex. 362; Heidenheimer v. Stewart, 65 Tex. 321; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Eylar v. Eylar, 60 Tex. 315." Graves v. Kinney et al., 95 Tex. 214, 66 S. W. 293.

See, also, Causey et al. v. Handley et al., 44 Tex. Civ. App. 340, 98 S. W. 431; Harrison v. First National Bank of Lewisville (Tex. Civ. App.) 224 S. W. 269; Harris et al. v. Hamilton et al. (Tex. Com. App.) 221 S. W. 273.

If appellant was an innocent purchaser of the notes and lien under the principles announced in the decisions, supra, she would be entitled to a judgment foreclosing the lien, and it is our opinion that, under all the facts and circumstances in the record, the evidence is insufficient to sustain the judgment of the court decreeing the lien invalid as to appellant.

[3] Appellant challenges as error the action of the court in holding the lien was a cloud upon appellees' title, and decreeing that it be removed, because the uncontroverted evidence shows that at least a portion of the money obtained on the notes, for which the lien was given, was expended for material that was used in finishing the home.

The evidence shows that on November 1, 1919, when the notes and lien were executed, that appellees were living upon the lots in controversy, and claimed the same as their homestead; that the house which they occupied was unfinished. Appellant's testimony tends very strongly to show that, after the execution of the notes and lien by appellees, they were furnished items of material aggregating in value $1,235, which was delivered on the ground where the house was to be completed.

Appellee Ralph Hibbs states that he may have been furnished some of the material for finishing the house; that he could not say how much, and could only tell from the bills of Moore and Richolt. These bills tend to show, as above stated, that the material furnished for the house aggregated $1,235. He further states that he would have to have his books to tell what he bought; that he would not give any amount until he looked it up; that he could not say how much went into the house after the execution of the materialman's lien contract; that it would be just guesswork with him, but that he did not believe as much as $1,200, or as much as $700, was used in finishing the house. Appellee's testimony is very unsatisfactory, indefinite, and uncertain on the amount of the material that he secured under the mechanic's lien to use in the completion of his home. Hence we conclude that the court erred in refusing a foreclosure for any amount, because, under

the facts revealed by the record, at least a part of the material purchased and paid for with the money obtained on the notes was used in completing the house, and the evidence is insufficient to support the judgment of the court canceling the lien for the entire amount as a cloud upon appellees' title.

The judgment is reversed and the cause remanded.