## LITTLE v. SHIELDS et al.
### No. 1437—6082.

Commission of Appeals of Texas, Section B.
Oct. 4, 1933.

R. H. Templeton, of Wellington, Dewey Young, of Dallas, and Ben H. Powell and J. A. Rauhut, both of Austin, for plaintiff in error.

Luther Gribble, of Wellington, and Jas. C. Mahan, of Childress, for defendants in error.

RYAN, Judge.

By duly recorded deed dated October 1, 1926, J. M. Shields and Myrtle Shields, his wife, conveyed to Frank Shields, their son, lots 1, 2, 3, and 4, block 89 in Wellington, Collingsworth county; the recited consideration being $2,500 in cash, one promissory note for $2,500 due October 1, 1927, and one promissory note for $975 due October 1, 1928, both signed by Frank Shields and payable to J. M. Shields or order. Said notes bear interest at the rate of 10 per cent. per annum from date until paid, as it accrues, contain the usual clause for an attorney's fee in case of default, recite retention of the vendor's lien on property conveyed, and that at the holder's option, upon failure to pay a note or any installment of interest, all notes so given may be matured.

Unable to pay said notes, Frank Shields, through a broker of his own selection and to whom he paid a fee, obtained a loan from plaintiff in error, a nonresident of the county, to take up, renew, and extend said notes and lien as well as a paving lien contracted by Frank Shields and his wife.

Effectuating such agreement of extension, Frank Shields and Grace Shields, his wife, under date July 15, 1928, executed their deed of trust to R. H. Templeton, trustee, conveying said property as security for the promissory note of even date therewith executed by said Frank and Grace Shields and J. M. Shields, in the sum of $3,500 payable to the order of M. Little, in five years from date, with interest at the rate of 10 per cent. per annum, payable semiannually, the makers having the option of partial payments in the sum of $100 or any multiple thereof on any interest payment day after one year; failure to pay interest or any part thereof to mature the entire note; 10 per cent. attorney's collection fee was also provided for.

Said deed of trust recites that: "The above loan is made for the purpose of renewing and extending the following indebtedness against the above described property, to-wit: two vendor's lien notes, one for the sum of $2500.00, dated October 1, 1926 and due October 1, 1927, and one note for the sum of $975.00, dated October 1, 1926, and due October 1, 1928, both notes drawing interest at the rate of ten per cent per annum from date and executed by Frank Shields and wife, Grace Shields and payable to J. M. Shields, and one note for the sum of $597.31, executed by Frank Shields and wife, Grace Shields, and payable to the Pan Handle Construction Company, on which two installments of $99.-75 have been paid, with interest at the rate of 8 per cent per annum from date."

It is provided in said deed of trust that on default in the prompt payment of said indebtedness, or any part thereof, principal or interest, or on failure of the grantors to keep any of the covenants therein contained, the trustee should sell said premises at public vendue, as is usually stipulated in trust deeds, and apply the proceeds of sale as therein stated.

When application by letter for the loan was made to him, Mr. Little advised that he would make it subject to the title and character of the parties being good and the security satisfactory. In pursunce to said understanding, Little had his brother, who then resided in Wellington, make inspection and report on the property, and Judge R. H. Templeton to examine and report on the title thereto. The former reported the property was of satisfactory value to secure a loan of $3,500 and that the character and reputation of J. M. Shields and Frank Shields was good as they were engaged in business in Wellington at the time. Judge Templeton reported (after having an abstract of title certified to date of examination), in writing, the title to the property good in Frank Shields, subject to the vendor's lien in favor of J. M. Shields and the paving lien above mentioned; he reported, also, the title good in J. M. Shields to said vendor's lien notes. Thereupon, Mr. Little mailed his check for $3,500 to Judge Templeton to close the loan. It was then agreed by the parties Frank Shields and J. M. Shields that Judge Templeton should satisfy the paving lien and deposit the balance of the fund in bank to their respective credits; Judge Templeton deposited $3,000 to the credit of J. M. Shields in the City National

Bank of Wellington, used about $418 to pay off the paving lien and obtain release thereof, and paid the remaining $82 by check to Frank Shields, and delivered said deposit slip, paid paving coupons and release of same, to J. M. Shields, with an explanation of the entire transaction, including the check to Frank Shields.

It appears that after such deposit was made to the credit of J. M. Shields, the bank, without the knowledge of Judge Templeton or of Little, at the request of Frank Shields, with the approval of J. M. Shields, changed the deposit to the credit of Frank Shields.

The original notes were indorsed to M. Little by J. M. Shields, who executed also a regular assignment of said notes, lien, and superior vendor's title to the property.

Default was made in payment of interest installments and in the insurance of the property, wherefore the option to declare maturity of the debt was exercised and Little brought suit, September 3, 1930, for the debt, interest, attorney's fee, and foreclosure of lien against Frank Shields, Grace Shields, his wife, and J. M. Shields. Frank Shields and his wife, Grace, filed no answer and made no appearance. Myrtle Shields, wife of J. M. Shields, intervened.

The answer of J. M. Shields and petition in intervention of his wife allege that the property in controversy was their homestead, that the deed of Frank Shields was without consideration, was a simulated transaction and a pretended sale of their homestead for the sole and only purpose of attempting to borrow money for the use of J. M. Shields in the business in which he was then engaged, also that when Little took up the original vendor's lien notes, one had already matured, and therefore he was charged with notice of the fact that the property involved was their homestead. They prayed that the deed to Frank Shields and the deed of trust by him and wife to R. H. Templeton, trustee, be declared null and void and that any recovery by plaintiff be denied.

By replication, plaintiff alleged fraud of J. M. Shields, his wife, and Frank Shields in the transaction and their estoppel to set up and plead such fraud in defense.

The trial court (a jury waived) rendered judgment for plaintiff Little for the full amount of his claim, with interest from date of judgment, against Frank Shields and J. M. Shields and foreclosure of lien as against all the parties.

On appeal from said judgment by J. M. Shields and his wife, Myrtle, the Court of Civil Appeals concluded that because one of the original vendor's lien notes taken up by Little was past due at that time, Little was not an innocent purchaser or bona fide holder thereof or of the second original vendor's lien note. That court, for that reason alone,

reversed that portion of the trial court's judgment ordering a foreclosure upon the property in question and rendered judgment refusing such foreclosure as to the two vendor's lien notes given by Frank Shields to J. M. Shields, but affirmed the personal judgment against J. M. Shields and Frank Shields for the sum of said two vendor's lien notes, and affirmed the judgment for the amount of the paving note and lien, together with the foreclosure of such paving lien as against all defendants. 40 S.W.(2d) 850.

### Opinion.

Reversal of the judgment below, by the Court of Civil Appeals, was on the single proposition that as one of the original vendor's lien notes was overdue when the entire debt (including such overdue note) was renewed and refinanced, this of itself charged plaintiff in error with full and inescapable knowledge of the invalidity of the lien at the time he made the loan, notwithstanding such renewal was concurred in and approved by the payee, J. M. Shields, as evidenced by his execution with the payors, of such renewal note, and notwithstanding both the trial court and the Court of Civil Appeals itself found that the entire scheme was devised by the defendants in error for the very purpose of defrauding some person by a simulated transaction, and the undisputed facts show that plaintiff in error, diligent and careful in every respect, exercising all the prudence of an ordinary man (as found by the trial court), relied upon the record, conduct and representations of defendants in error and their agents, and after a full investigation and inquiry, carefully and honestly pursued by his own attorney, made the loan and parted with his money, in the utmost good faith.

Frank Shields testified that the purpose of the deed to him was to obtain a loan and that he attended to the negotiations therefor.

J. M. Shields testified that he needed the money in his business and executed the deed to his son in the attempt to obtain a loan; he denies having received any of the proceeds of the loan that was obtained, but does admit indorsing and transferring the notes and at that time he did not tell any one that it was a simulated transaction. He testified further that he and Frank were acting together for the purpose of accomplishing a loan. We quote the following from his testimony: "No, I did not know Mr. Little at the time. I never did tell him that this was a simulated transaction between myself, my wife and my son. I did not tell Mr. Julian that and did not tell any body that. I am telling that now for the first time. My son and his wife did live up there with us a little while and that was after the deed was made. * * * I had been trying to get my son to deed this property back to me before this note was paid but could not get him to

do it. Yes, after that I transferred the lien and notes to Mr. Little. After we got it all closed up I was able to get him to deed it back. * * * No, I have not been out a cent: No, I am not disputing any thing that my son Frank did in this matter."

Mrs. J. M. Shields testified that the purpose of the deed was to borrow money to help her husband in his business, and what she did was to execute the deed and turn the matter over to Frank and her husband to be finished. On cross-examination she said: "No, I am not trying to claim it as a homestead and beat it all. I expect to pay it if I can. * * * I did sign the deed to get the loan."

■ Equity will not permit parties to plead their own fraud as a defense under such a state of facts as this record discloses.

■ The contention that because J. M. Shields and his wife remained in possession, such possession was notice to Little of their homestead claim, notwithstanding their conveyance of the property to another, was decided the very contrary by the Supreme Court in Eylar v. Eylar, 60 Tex. 315. The court there held that a purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title when he finds on record a deed from such vendor conveying title, properly proved up and registered. The court said: "Can the simple fact that they [grantors] remained in possession of the land which they had declared belonged to another, which they might lawfully do as the tenants at sufferance or otherwise of such other person, make it requisite for any person who may desire to buy from the person whom they have so declared to be the owner, to inquire of themselves whether or not they had uttered the truth in their deed, whether or not their own declaration was false? We are of the opinion * * * that a purchaser from O. A. Eylar was not bound to inquire of the appellees what right they had in the land; that the inquiry was sufficiently prosecuted; prosecuted as far as a prudent man, having a due regard to the rights of others, and to his own protection, would be bound to prosecute it, when he looked to the record and there found that O. A. Eylar was declared by the very persons in possession to be the true and absolute owner of the land." Of course, as said by the court: "There are cases to which registration laws do not apply, * * * but those are cases in which titles vest by operation of law, or cases in which there has not been a wrongful holding out of some person to be the true owner of land, when in fact some other person has the better right, and not cases in which parties, as between themselves, have executed instruments evidencing their respective rights, which may be and which the law requires to be registered."

A vendor's possession of land as tenant of his vendee is consistent with his deed to the latter and is not notice to the subsequent purchaser of any assertion of right to the land inconsistent with his conveyance. Hoffman v. Blume, 64 Tex. 334; Eastham v. Hunter, 98 Tex. 560, 86 S. W. 323; Brigham v. Thompson, 12 Tex. Civ. App. 562, 34 S. W. 358; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Hurt v. Cooper, 63 Tex. 362; Heidenheimer v. Stewart, 65 Tex. 321; Graves v. Kinney, 95 Tex. 210, 66 S. W. 293; Paris Grocer Co. v. Burks, 101 Tex. 106, 105 S. W. 174; 13 L. R. A. (N. S.) 117, note.

And where, as in this case, consistent with the deed to the son, the father executed transfer of his lien and joined in the new note into which the old note was merged, and received full consideration therefor as is evidenced by the deposit in bank to his credit of the full amount thereof, he is estopped from setting up such a defense founded upon his remaining in a possession not inconsistent with the recorded instruments as stated in Eylar v. Eylar, supra.

■ If we assume that Little purchased the past-due notes and that that alone was the transaction, he would be charged only with notice of any defense which the makers had but not with notice of secret equities of third parties. Etheridge v. Campbell (Tex. Com. App.) 215 S. W. 441. Here, the makers of the note, Frank Shields and wife, are not asserting any defense whatsoever, and J. M. Shields, payee, is precluded by his warranties in indorsing and transferring the paper. Kempner v. Huddleston, 90 Tex. 182, 37 S. W. 1066; 6 Tex. Jur. p. 839, § 196, p. 732, § 110.

■ It makes no difference that the first of the two vendor's liens was in fact mature at the time defendants in error induced plaintiff to take it up, for the doctrine that a purchaser after maturity takes subject to all defenses applies only to cases where the facts do not create an estoppel. Farmers' State Bank v. Welch (Tex. Civ. App.) 279 S. W. 481; Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234; Heidenheimer v. Stewart, 65 Tex. 321.

There may be a difference, in some cases, between claims to the note and claims to the security, as illustrated by Judge Critz in Wood v. Sparks (Tex. Com. App.) 59 S.W. (2d) 361, 362, where the court said: "It is the settled law of this state that when a lien is taken on land to secure a negotiable promissory note, the note * * * can be transferred and treated as such, but the negotiable quality of the note does not govern as to the lien securing it. On the other hand, it is a settled rule of this state that the law of notice controls for the purpose of determining the rights of the parties as regards the lien. * * * Under the above rule,

where a note negotiable in form is secured by a lien on land, an innocent purchaser thereof is protected as such in so far as the personal obligation to pay the debt evidenced by the note is concerned, but in so far as the lien is concerned, such purchaser is charged in law with notice of duly recorded instruments."

So here the recorded instruments evidence a merger of the old note in and renewal thereof by the new note and an assignment thereof as well as the lien securing it, so that Little became the owner of the note and lien as well as the new note and new lien.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

CURETON, Chief Justice.

Judgment of the Court of Civil Appeals reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.