SMITH et al. v. NEW WAVERLY STATE BANK.

No. 2603.

Court of Civil Appeals of Texas. Beaumont.

Nov. 19, 1934.

Rehearing Denied Nov. 28, 1934.

J. S. Bracewell, of Houston, for appellants.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellee.

WALKER, Chief Justice.

In 1906 appellants, Lucy Smith and husband, Monroe Smith, acquired 75 acres of the John Saddler donation and Rodney Hostetter survey in Montgomery county, and since that date have continuously cultivated, occupied, used, and enjoyed it as their homestead. In 1915, being indebted to Dr. Charles Spiller in the sum of approximately $1,000 for supplies, they executed to him a mortgage on their homestead in the form of a general warranty deed, reciting a consideration of $750. After the execution of this instrument, they continued to occupy and claim the property as their home and to assess it for taxes and pay the taxes thereon, as they did prior to the execution of the mortgage to Dr. Spiller. On the 16th day of February, 1920, Dr. Spiller reconveyed the property to Monroe Smith by special warranty deed, for the recited consideration of $2,000, paid as follows: $1,049.32 paid in cash, and the balance in four promissory vendor's lien notes each for the sum of $237.67, with interest from date at 10 per cent. per annum, maturing November 1, 1920, November 1, 1921, November 1, 1922, and November 1, 1923, respectively. Each of the notes contained the statement that it was given in part payment of the land in controversy; that a vendor's lien was retained in the deed to secure its payment; and that it was "one of a series of four similar notes, payable to Charles Spiller, this day given by Monroe Smith, as part of the purchase price for said above mentioned property." It was further stipulated in each of the notes that a vendor's lien was retained against the land to secure its payment. The entire transaction between appellants and Dr. Spiller from the

execution of the first instrument in 1915 to the execution of the deed by Dr. Spiller to Monroe Smith, and the execution of the vendor's lien notes by Monroe Smith to Dr. Spiller, on the 16th day of February, 1920, was intended by appellants and Dr. Spiller as a mortgage to secure Dr. Spiller in the original indebtedness due him by the Smiths. On the 13th of June, 1922, Dr. Spiller executed his note in the sum of $989.45 to appellee, New Waverly State Bank, and placed with appellee the Monroe Smith notes as collateral to secure the payment of his note. At that time the Smith notes, Nos. 1 and 2, were past due. Dr. Spiller died soon after the execution of his note to appellee. After appellee secured the Smith notes, Monroe Smith paid off notes Nos. 1 and 2. On the 16th day of October, 1926, Monroe Smith executed to appellee an extension and renewal of notes 3 and 4, reciting that these notes were the property of appellee and that they had not been paid. Lucy Smith was not a party to the transaction between her husband and Dr. Spiller, nor to the extension of the notes, and it was not shown that she was consulted in relation to these transactions, but, in fact, knew of them and consented to the payment of notes Nos. 1 and 2, contributing to their payment from her earnings as a school teacher. In 1930 appellee filed suit against Monroe Smith to foreclose the vendor's lien retained in notes 3 and 4 and in the Spiller-Smith deed. Lucy Smith was not a party to that suit. Smith answered that suit by general demurrer, general denial, and a special plea that the land against which appellee was claiming its vendor's lien was his homestead, and that the claimed vendor's lien was void by reason of that fact. On the 16th day of December, 1930, the court entered judgment against Monroe Smith reciting "plaintiff appeared in person and by attorney, announced ready for trial, and defendant came not, although having been duly cited in the manner required by law and further having answered herein but wholly made default," etc. The judgment foreclosed the vendor's lien. Smith filed motion for new trial, setting up in some detail his defenses to the action. This motion was controverted and, on hearing, overruled. No appeal was prosecuted, and the judgment became final as originally entered. Under order of sale, the property was sold to appellee. On the 17th day of July, 1931, Lucy Smith and her husband, Monroe Smith, filed this suit against appellee, New Waverly State Bank, to recover the title and possession of their homestead of 75 acres, for cancellation of the outstanding deeds against them, for costs of suit, etc.

On the 19th day of September, 1933, on trial to the court without a jury, judgment was entered against the plaintiffs and in favor of the defendant for the land in controversy. From that judgment plaintiffs have duly prosecuted their appeal to this court.

### Opinion.

The fact that the deed executed in 1915 by appellants to Dr. Spiller and the deed executed by Dr. Spiller to Monroe Smith in 1920, together with the vendor's lien notes executed by Monroe Smith to Dr. Spiller, were mutually intended by all parties to be nothing more than a mortgage to secure the indebtedness of the Smiths to Dr. Spiller, made the entire transaction null and void, in so far as it attempted to create a lien against appellants' homestead. Article 16, § 50, state Constitution. Appellee does not controvert that proposition, but in answer thereto advances the following counter proposition: "The continued possession of the property by Monroe and Lucy Smith was not notice as a matter of law, to New Waverly State Bank, that the deed from Monroe and Lucy Smith, to Dr. Spiller, was in fact a mortgage." The following authorities support, generally, the principle of law asserted by this proposition: 22 Tex. Jur. § 122; Alstin's Ex'r v. Cundiff, 52 Tex. 453; Martin v. Granger (Tex. Civ. App. 1918) 204 S. W. 666; Eylar v. Eylar, 60 Tex. 315; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37 (1907); Little v. Shields (Tex. Com. App.) 63 S.W.(2d) 363. But appellee's counter proposition does not control the facts of the case, for the reason that, having acquired the four notes after the maturity of notes Nos. 1 and 2, it was not a holder in good faith. That was the very point decided by the Supreme Court on identical facts in Harrington v. H. B. Claflin & Co., 91 Tex. 294, 42 S. W. 1055.

Not being a holder of the notes in good faith, appellee acquired no rights against Lucy Smith's claim of homestead by its judgment against Monroe Smith, to which she was not a party, foreclosing the Spiller-Smith vendor's lien notes. Appellee has so clearly stated the rule of law voiding that judgment as against Lucy Smith that we quote its proposition: "The rule in Texas is that a wife is a necessary party to a foreclosure suit brought against the husband alone, provided there is any defense that the wife *could* have urged growing out of her homestead rights *which would have defeated the action*." (Italics by appellee.)

See Mexia v. Lewis, 3 Tex. Civ. App. 113, 21 S. W. 1016, 1017 (Galveston); Jergens v. Schiele, 61 Tex. 255; Citizens' State Bank v. Jeffries (Tex. Civ. App.) 2 S.W.(2d) 317; Martin v. Astin (Tex. Com. App.) 295 S. W. 584; Cooley v. Miller (Tex. Com. App.) 228 S. W. 1085; Gates v. Pitts (Tex. Civ. App.) 291 S. W. 948; Seay v. Fennell, 15 Tex. Civ. App. 261, 39 S. W. 181; Broadland v. City National Bank (Tex. Civ. App.) 15 S.W.(2d) 112. Certainly Lucy Smith's claim of homestead would have been an absolute defense to appellee's suit.

■ As the judgment foreclosing the vendor's lien against the homestead was absolutely void as against Lucy Smith, it was also absolutely void as against her husband, Monroe Smith; so no estoppel was created against either of them by reason of that judgment. Mexia v. Lewis, supra; Martin v. Astin, supra; Harper v. Stewart (Tex. Civ. App.) 179 S. W. 277; Seay v. Fennell, 15 Tex. Civ. App. 261, 39 S. W. 181.

It follows that, in this suit, appellants had the right to plead their homestead claim, as they did; and the proof offered under this plea rendered absolutely void the chain of title under them through which appellee claimed and was awarded the title to the land in controversy.

■ In support of its judgment, appellee advances the following additional counter propositions to the contentions of appellants:

First. As stated above, Monroe Smith joined issue with appellee in its suit against him to foreclose the Spiller-Smith vendor's lien notes. The trial court filed the following conclusion of fact: "I find that Monroe Smith in said cause No. 17170 duly joined issue with the New Waverly State Bank with the knowledge, acquiescence and consent of his wife, Lucy Smith, and that the said Monroe Smith placed in issue in said cause No. 17170, the issues and defenses alleged and sought to be raised by the plaintiffs in this suit."

Though Lucy Smith was not a party of record to cause No. 17170, she testified in the hearing on the motion for new trial in that case, and in the trial of this case gave the following testimony which we take from appellee's brief:

"Q. You were here when Monroe testified? A. Yes, sir.

"Q. You didn't hear him testify that this was a mortgage you all had given Dr. Spiller, did you? A. Yes, sir, I heard him say that.

"Q. You never testified to it, did you? A. I don't know, sir, whether I did or not.

"Q. You didn't even tell Judge McCall, did you, the old white haired gentleman? A. Yes, I know him real well. I know Judge McCall. I am afraid to say; I don't know whether I did or not. I don't remember him questioning me. He could have, but I don't remember him questioning me.

"Q. You knew that Monroe was claiming that was a mortgage didn't you; you knew he was testifying before Judge McCall that you all hadn't sold the place to Dr. Spiller; you heard Monroe testify a while ago that he testified before Judge McCall that was his home, and that you all gave Dr. Spiller a mortgage? A. Yes, sir, I heard him say that.

"Q. You knew that he was contending that, didn't you? A. Yes, sir.

"Q. You know you were here in court? A. Yes, sir.

"Q. You heard him testify to that? A. Yes sir.

"Q. You are not sure whether you testified to it or not, are you? A. No sir.

"Q. * * * When did you first become acquainted with Mr. Bracewell, when Judge McCall was up here, when you came before Judge McCall; that was the first time you ever saw Lawyer Bracewell, wasn't it? A. Yes, sir.

"Q. Lawyer Bracewell didn't put you on the witness stand in that trial did he? A. I don't know, sir. I swore to something down there. I think I swore to something to Judge McCall.

"Q. What do you say you swore to Judge McCall? A. To tell the truth, or something.

"Q. If you swore to tell the truth, what truth did you tell? A. I don't know, sir.

"Q. You never told them this was your homestead, did you? A. If I did, I aimed to tell him, if I didn't tell him.

"Q. You think you told him, do you; do you think you told Judge McCall that, when you held up your hand to tell the truth, and nothing but the truth, so help you God? A. If he asked me that I really told him, because I wouldn't tell anybody anything else.

"Q. If he asked you if it was a mortgage, you told him didn't you? A. Yes, sir."

On this statement appellee advances the following counter proposition: "When Lucy Smith appeared and testified in the hearing on the motion for new trial, asserting her homestead rights, she became bound by the judgment entered therein and cannot in this action again assert her homestead rights which were adjudicated in the former action."

Appellee invokes the general principle of law stated by 15 R. C. L. 1020, as follows: "By participating in the proceedings one is estopped by the judgment as to any question actually litigated and decided therein." Again that authority says: "The courts look beyond the nominal parties, and treat all those whose interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment which may be rendered."

But to make the principle of law invoked by appellee controlling it must appear that the interference by the stranger to the record "amounted to assuming practical control of the whole prosecution or defense of the action." 34 C. J. 1009. The facts brought forward by appellee do not support a conclusion that Lucy Smith assumed "practical control" of the defense to appellee's suit against her husband. So, even if appellee's counter proposition has application to a married woman, a point we do not decide, it states a mere abstract principle of law in so far as the facts of this case are concerned.

Second. Mexia v. Lewis and the other authorities cited in connection therewith, supra, deny appellee's counter proposition that its judgment against Monroe Smith was res adjudicata as to his rights in and to the property in controversy, and that he was estopped by reason of that judgment to plead his homestead rights in this cause. The authorities cited fully support the conclusion that, since the judgment was void as against Lucy Smith, it was void also as against her husband.

■ Third. There is no merit in the counter proposition that the notes were subject only to defenses available to Monroe Smith; Lucy Smith had the right to defend against them on her claim of homestead.

■ Fourth. We also overrule appellee's fifth counter proposition: "One who fails to qualify as a bona fide purchaser of a note for the sole reason that it was past due when purchased, can still be a bona fide purchaser as to the lien securing the note, the note and lien being separate and distinct."

As appellee was not an innocent holder of the notes, it necessarily follows that it was not an innocent holder of the vendor's lien against the homestead.

■ Fifth. The sixth counter proposition is as follows: "When Monroe Smith renewed and extended the notes remaining unpaid (Notes 3 and 4 of the series), he thereby waived any defenses he might have had to the notes."

Monroe Smith had no power to waive his wife's defense of homestead claim against the demand of appellee, or in any way estop her from asserting that defense.

The evidence clearly shows that notes Nos. 1 and 2 were past due when appellee acquired them, and, if the trial court's conclusions of fact are subject to a contrary construction, they are set aside as without support. The record is also clear that appellee developed fully the extent of the participation of Lucy Smith in the trial of cause No. 17170.

From what we have said above, it follows that the judgment of the lower court in favor of appellee must be reversed, and, as it satisfactorily appears that the record was fully developed on the trial of this case in the court below, judgment should here be rendered in favor of appellants for the title and possession of the 75 acres of land in controversy. It is accordingly so ordered.

### On Rehearing.

The fact that appellants did nothing to induce appellee to purchase the Dr. Spiller notes clearly distinguishes this case from Little v. Shields (Tex. Com. App.) 63 S.W.(2d) 363, and Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234, with which appellee, in its motion for rehearing, insists we are in conflict. Had appellants induced appellee to purchase the Dr. Spiller notes on a representation that the notes were valid, then appellee could have invoked against appellants the principle of equitable estoppel, recognized and enforced in the cases cited supra. The principle of equitable estoppel was recognized by this court in Judge v. Shaboub, 57 S.W.(2d) 613, 616, where we said: "We think these facts support the conclusion of the trial court that appellants were estopped to assert their claim of homestead against the deed of trust lien. In Burnett v. Atteberry, 105 Tex. 119, 145 S. W. 582, 587, our Supreme Court quoted with approval the rule that 'he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard * * * when he ought to be silent.' In Garrett v. Katz, 23 S.W.(2d) 436, 438, Judge Looney, speaking for the Dallas Court of Civil Appeals, said: 'The doctrine is also well settled that, where a void lien emerges from an illegal transaction, such as the one involved in this controversy, the maker will be estopped to set up its invalidity where he has induced a stranger to become its purchaser on representations that asserted its validity." See

Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Cain v. Bonner (Tex. Civ. App.) 149 S. W. 702; Melcher v. Higbee (Tex. Civ. App.) 165 S. W. 478, 481; Moore v. Beakley (Tex. Com. App.) 215 S. W. 957; Baxter v. Baxter (Tex. Civ. App.) 225 S. W. 204; Farmers' State Bank v. Welch (Tex. Civ. App.) 279 S. W. 481; Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234; Barron v. Theophilakos (Tex. Civ. App.) 13 S.W.(2d) 739."

As appellants did not induce appellee to purchase the notes, the case of Harrington v. H. B. Claflin & Co., cited in our original opinion, is absolutely on all fours with the facts of this case supporting our conclusion that appellee "was not a holder in good faith." It follows that the motion for rehearing, the motion to certify, and the motion for oral argument should be overruled, which is accordingly the order of this court.