## ADCOCK v. NATIONAL LOAN & INVEST-
## MENT CO. et al.
### No. 4524.

Court of Civil Appeals of Texas. Amarillo.
Jan. 20, 1936.

Rehearing Denied Sept. 7, 1936.

Lockhart & Brown, of Lubbock, for appellant.

Bledsoe, Crenshaw & Dupree, of Lubbock, Stone & Guleke, of Amarillo, and J. H. Beall, Jr., of Sweetwater, for appellees.

MARTIN, Justice.

About the last day of January, 1928, appellant and her then husband sold certain property in the town of Lubbock, upon which they were then residing and using as a homestead, in consideration, among other things, of the conveyance to them of a vacant lot, which we denominate in this opinion as the Ellwood lot, and which is the one in controversy. They intended at the time to at once erect improvements on the Ellwood lot and use same as their homestead. They shortly thereafter did erect these improvements and occupied same as their home.

On February 1, 1928, while the said Ellwood lot was still vacant and unoccupied, and while appellant and her then husband were occupying their former residence, appellant's then husband executed to one T. H. Dodson a materialman's lien to secure said Dodson in the payment of a note for $2,500, dated February 1, 1928, due March 10, 1928, and reciting that said note was executed in payment for certain improvements to be erected on the aforesaid premises.

Thereafter, another lien was executed on this property to secure a larger amount of money for the erection of improvements, but this passes out of the case with the disposition we have made of same, and will not be described in detail.

The Dodson note and lien subsequently became merged in a larger note and deed of trust lien. The purported signature of the wife appears to the Dodson lien and note, as well as also to subsequent deeds of trust and many other instruments. Said indebtedness becoming in default, the property was sold at trustee's sale and a substitute trustee's deed executed to the purchaser thereof, purporting to convey all the right, title, and interest of appellant

and her former husband. Appellant and her husband were before the institution of this suit divorced, and she alone filed this suit, alleging that the Dodson lien, together with the others subsequently executed, were invalid; that the property constituted her homestead on the date of the Dodson lien, and thereafter, and that her purported signature, as well as that of the notary to her certificate of acknowledgment, were forgeries; that she never signed the Dodson note and lien, nor any of the other instruments, nor did she ever appear before a notary and acknowledge same.

The answers of appellees are not necessary to notice further than that they raised the issues which we hereafter discuss.

The case was submitted to the jury upon many special issues, some of which remained unanswered. The appellee National Loan & Investment Company made a motion for judgment non obstante veredicto. A hearing was had on this and same was granted, all issues being withdrawn from the jury. The evidence showed, and the jury found, that both the signature and acknowledgment of appellant on the Dodson lien were forgeries. The evidence further shows that this Ellwood lot was received in exchange for the homestead of appellant, and that she intended to make it her homestead; but it fails to show that she had done any act in furtherance of said intention, and that such lot was a vacant, unimproved lot on the date the Dodson mechanic's lien was executed by her then husband.

■■ This record has proven very perplexing to us. We have finally concluded that the answer to the multitude of contentions presented is found in the solution of the one question of whether or not appellant, the wife, had a homestead estate in the lot in controversy at the time the Dodson mechanic's lien was executed. If yes, the Dodson lien was void under the Constitution, because her signature and acknowledgment thereto were both found upon sufficient evidence to be forgeries. If no, her signature and acknowledgment thereto were not necessary, and all findings respecting these became immaterial. It is not denied that a portion of the Dodson debt remained unpaid at the time of the trustee's sale above mentioned, and that no tender of payment of such part was ever made. It therefore becomes unnecessary to lengthen this opinion by a discussion of the validity of the debt in excess of this one. We quote: "A portion of the loan being secured by a valid lien against the property, a sale under the deed of trust, made in accordance with its terms, passed title to the property. As stated in W. C. Belcher Land Mortgage Co. v. Taylor, et al. (Tex.Com. App.) 212 S.W. 647, 649: 'A sale made under a deed in trust for a sum larger than the amount with which the property is properly chargeable is not void, and a power of sale in such deed can be exercised if any part of the debt is due and owing. * * * The amount of the indebtedness secured by the vendor's lien was included in the note secured by the deed in trust, and, same being due and payable, and default made in its payment, a sale was authorized under the deed in trust. Mere excess, if any, in the amount of the note does not affect the validity of the sale.'" E. Y. Chambers & Co. v. Little (Tex.Civ.App.) 21 S.W.(2d) 17, 21.

We therefore narrow the inquiry here to the one question of whether or not the Dodson lien was valid when executed by the husband alone, it being assumed here that his wife's signature and acknowledgment to such instrument were both forgeries.

On the date of the Dodson lien, the lot was vacant and unoccupied. It had no improvements, save some shrubs and an old fence, placed thereon years before by a prior owner. Appellant lived still in the home traded for this lot. Nothing had been done by appellant or her husband evidencing an intention to occupy this lot as a homestead. The controlling facts are not essentially different from those recited in the recent case of Guajardo et ux. v. Emery et al. (Tex.Civ.App.) 73 S.W. (2d) 615 (writ denied). See, also, West End Town Co. v. Grigg, 93 Tex. 451, 56 S.W. 49; Sproulle v. McFarland (Tex. Civ.App.) 56 S.W. 693; Cobb v. Collins, 51 Tex.Civ.App. 63, 111 S.W. 760; Swope v. Stantzenberger, 59 Tex. 387; Clem Lumber Co. v. Elliott Lbr. Co. (Tex.Com. App.) 254 S.W. 935; Bunton v. Paim (Tex.Sup.) 9 S.W. 182; Keys v. Tarrant County Bldg. & Loan Ass'n (Tex.Civ. App.) 286 S.W. 593; Crawford v. Grand Saline Lbr. & Supply Co. (Tex.Civ.App.) 281 S.W. 592; Skiles v. Shropshire et al., 124 Tex. 462, 77 S.W.(2d) 872.

■ It is vigorously contended that under the pointed language of Judge Cureton in Andrews v. Security Nat. Bank,

121 Tex. 409, 50 S.W.(2d) 253, 83 A.L. R. 44, the homestead estate of appellant was transmuted by exchange immediately into the lot in controversy and vested eo instanti with the exchange of deeds. Some of the language, but not the facts of the case, sustain appellant. We interpret this case in the light of what was before the court. In the Andrews Case one improved homestead was exchanged for another improved one, fit and ready for immediate occupancy. Here the lot was vacant and could not be occupied immediately. The definition of a "homestead" in article 16, § 51, of the Constitution, comprehends its use "for the purposes of a home." Mere intent to occupy it does not operate to vest a homestead estate in the wife. Authorities, supra. See, also, 22 Tex.Jur. p. 51. In the Andrews Case, supra, emphasis is given the principles of law announced in the case of Evans v. Daniel, 25 Tex.Civ.App. 362, 60 S.W. 1012, 1013; but in the latter case the holding is in part conditioned upon the existence of the following fact, not present here: "If C. J. Daniel intended, at the time he acquired the land, to make it his homestead, *and if it was then in a condition to be occupied by him as a homestead without any further improvements being made thereon,*" etc. (Italics ours.) We have found no case, and are cited to none, where a homestead estate is held to vest eo instanti upon the exchange of a former homestead for vacant property, not ready or suited for occupancy as a home. This we think because of the language of our Constitution commanding in effect its "use" before a homestead estate vests.

█ Accordingly, we hold that under the particular facts of this record, appellant had no homestead estate in the lot in controversy at the time a lien thereon was given by the husband to Dodson.

Every controlling contention of appellant is answered by this one holding, and to discuss these is but to repeat it again and again. .

We think the record conclusively shows the right of appellee to a peremptory instruction. We are further of the opinion that this entire record sufficiently evidences that this was one of the controversial points before the trial court on motion for judgment non obstante veredicto, and that appellant appeared at the hearing of this motion and contested same.

No purpose could be served by reversing and remanding so that the trial court could peremptorily instruct a verdict for appellee.

Judgment affirmed.

### On Motion for Rehearing.

█ In this case the jury found that the Dodson mechanic's lien contract was "simulated." The manner of submission of this question was vague and indefinite, and emphasis was placed by appellant originally upon this as a finding that it was in fraud of the wife's homestead rights. As originally pointed out, this purported lien was executed by the husband on vacant property, while the family occupied another place as a home. We adhere to our original view that she had no homestead interest in the Ellwood lot at that time. It therefore couldn't have been in fraud of a right she didn't possess. It is now vigorously insisted that it was void as to the husband also; that there was no consideration for same; that Dodson worked only as a laborer and was paid for his services by appellant; that such contract was not signed by Dodson and no proof was made that he ever accepted same or acted under it, or that it ever became a binding contract as to him, and therefore no mechanic's lien was legally created by it. Admitting all this, Adcock's acts with and representations to appellee estopped both him and his wife, under well-settled rules, to raise any such questions. Application for a loan and an affidavit of completion and acceptance were made and filed with appellee by Adcock prior to procuring the loan in question. In part these stipulated:

"Is the property incumbered in any way by mortgage or mechanic's liens, unpaid taxes, judgment, suits pending, or liens of any kind? If so, state the nature, date, maturity and amount of incumbrances and held by whom. (Answer fully.)

"$2500.00 m/1 note dated February 1st, 1928, due in forty days from date payable to T. H. Dodson, contractor.

"Is the above mentioned lien, which you seek to have said company purchase and extend, a good and valid lien? Yes. * * *

"All representations herein are strictly true, and are made as a basis of credit and to secure the loan applied for. * * *

"The said mechanic's lien and note were given in part payment for improvements

to be made on said described land, costing $2800.00.

"Affiants further say that said improvements have been made in accordance with the plans and specifications, and that the same have been accepted and approved by them.

"Also at the same time personally appeared T. H. Dodson, contractor named in the above described lien, who after being by me duly sworn, says on oath that the above and foregoing statements are true, and that all bills for material and labor used in said premises have been paid."

Other statements of similar character were made. We quote:

"As a rule, the law regards the husband as the head of the family, and accords him the authority to select the home for the family. Schulz v. L. E. Whitman & Co., 119 Tex. 211, 27 S.W.(2d) 1093. It necessarily follows, then, that, while the place selected is being prepared for use as a home, the homestead character of the place depends on his intention alone. The concurring intention of his wife is not required, and has no force to sustain the homestead character of the place. . Steves v. Smith, 49 Tex.Civ.App. 126, 107 S.W. 141 (writ refused). Whatever homestead claim she could be said to have, in such a case, would be founded on the intention of her husband to put the place to use as the family home. If he were to abandon such intention, or become estopped by his acts from asserting same, the indispensable support for her homestead claim, as well as his, would be gone. His actions in the last-mentioned respect could not operate as a fraud on her, for the reason that the place would not have become a homestead in fact, by use for the purposes of a home as the Constitution (article 16, § 51) prescribes, and she would have no independent rights to be affected. The circumstance that the proceeds of the sale of a former home were involved would be beside the question." Skiles v. Shropshire et al., 124 Tex. 462, 77 S.W.(2d) 872, at page 873.

■ Mention is made of the fact that the note was past-due when transferred to appellee. This was immaterial. "It makes no difference that the first of the two vendor's liens was in fact mature at the time defendants in error induced plaintiff to

take it up, for the doctrine that a purchaser after maturity takes subject to all defenses applies only to cases where the facts do not create an estoppel. Farmers' State Bank v. Welch (Tex.Civ.App.) 279 S.W. 481; Bernstein v. Hibbs (Tex.Civ. App.) 284 S.W. 234; Heidenheimer v. Stewart, 65 Tex. 321." Little v. Shields (Tex.Com.App.) 63 S.W.(2d) 363, at page 366.

■ Our original opinion of affirmance was based in part upon the hypothesis that a portion of the Dodson debt remained unpaid at the time of the sale of appellant's property. This, appellant vigorously denies. After much time spent in going through an extremely complicated record, bristling with figures, we have been unable to come to a conclusion upon this question that completely satisfies us. Appellee's reply to appellant's contention contains a calculation designed to show conclusively the correctness of our original view, but we are unable to verify the figures given by it from the record. Appellee states: "The witness Todd, an officer of the appellee company, testified without dispute, that only five payments of Eighty Two and 06/100 ($82.06) Dollars each, or a total of Four Hundred and 30/100 ($400.30) Dollars was paid by the appellant after the execution of the renewal and extension agreement. Deducting this amount of Four Hundred and 30/100. ($400.30) Dollars from Eight Hundred Eighty Three and 81/100 ($883.81) Dollars, leaves Four Hundred Eighty Three and 51/100 ($483.51) Dollars, as being due at the time the trustee's sale was held."

We cannot find where Todd made any such statement and no reference is given by appellee to any page. where same may be found. We are not required to audit complicated accounts, and freely confess our inability to do so. Obviously a court should not deprive any litigant of a claimed legal right without being able to demonstrate the correctness of its position, at least to its own satisfaction. After as earnest an effort to do this as we are capable of, we have failed, and therefore are of the opinion that this case should be reversed and remanded for a finding upon this question.

Motion for rehearing granted, and case reversed and remanded.